## TEACHERS CONSERVATIVE INVESTMENT ASS'N v. ENGLAND et al.

No. 16068—Opinion Filed Jan. 12, 1926.

**1. Appeal and Error — Right to Complain —Submission of Interrogatory in Equity Case.**

In a case of purely equitable cognizance, the court may call a jury and submit to it any issue or issues of fact, but the jury acts solely in an advisory capacity, and the court may accept or reject the finding of the jury upon the facts submitted, as the whole matter both questions of law and fact, must necessarily be left to the court to determine, and error cannot be predicated upon the submission of but one question of fact to the jury, and particularly is this true where the complaining party fails to request the submission of any other question of fact to the jury.

**2. Trial—Verdict—General or Special Verdict—Statute.**

Section 551, Comp. Stat. 1921, provides as follows: "The verdict of the jury is either general or special. A general verdict is that by which they pronounce generally upon any and all issues in favor of the plaintiff or defendant. A special verdict is that by which the jury finds the facts only." Held, the answer to the interrogatory herein propounded to the jury was a special verdict and not a general verdict.

**3. Reformation of Instruments—Mistake—Proof.**

In order to justify a reformation of a contract, the evidence must be full, clear, unequivocal, and convincing as to the mistake and its mutuality. Mere preponderance of the evidence is not enough. The proof must establish the facts to a moral

certainty, and take the case out of the range of reasonable controversy.

#### 4. Equity—Relief from Mistake—Diligence.

Equity will not extend its aid to one who has been guilty of culpable neglect. It requires that the party who seeks relief upon the ground of mutual mistake shall exercise at least the degree of diligence which may be fairly expected from a reasonable person.

#### 5. Appeal and Error—Review of Equity Case.

In an action of purely equitable cognizance, the Supreme Court will consider the entire record and weigh the evidence, and cause to be rendered such judgment as the trial court should have rendered.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Stephens County; M. W. Pugh, Judge.

Action by I. E. England and E. E. Harrell against the Teachers Conservative Investment Association. Judgment for plaintiffs, and defendant appeals. Reversed, with directions.

Womack, Brown & Cund and J. H. Foster, for plaintiff in error.

Sandlin & Winans, for defendants in error.

Opinion by RUTH, C. The parties hereto will be designated as they appeared in the trial court.

Plaintiffs I. E. England and E. E. Harrell allege that on March 2, 1918, they executed a certain oil and gas lease on 40 acres of land in Stephens county, to the defendant, and that plaintiffs agreed to lease the same for a period of five years, but through a mutual mistake the lease was made to run for a period of ten years, and they seek to reform the same to conform to what they allege in their petition was their original intention and agreement. Defendant admits the execution of the lease, but denies the lease agreement was ever intended to extend only for a period of five years, but it was understood and agreed that the lease should be for ten years, as set forth in the lease. Judgment was for the plaintiffs reforming the lease, and defendant appeals. A jury was impaneled to assist the court in determining a question of fact and the court submitted to the jury the following interrogatory:

"At the time of the execution of the oil lease in question did the parties, both plaintiffs and defendant, mutually intend that the same should be a five or a ten-year lease?"

The verdict and answer to the interrogatory was: "Five years." A motion for judgment non obstante veredicto was filed by defendants and overruled. After motion for new trial was filed and overruled, the court entered a judgment reciting:

"To which ruling of the court said defendant Teachers Conservative Investment Association excepted, and the court upon consideration of the verdict, finds the issues herein, in favor of the plaintiffs," etc.

Defendant assumes the position that the interrogatory was clearly erroneous, in that it did not give the jury an opportunity to express other conclusions which it might have reached and which would have had the effect of denying the relief prayed. The position is untenable. It is within the province of the court, in a case of purely equitable cognizance, to impanel a jury and submit to it any question of fact.

Section 533, C. O. S. 1921, provides:

"All other issues of fact shall be tried by the court subject to its power to order any issue or issues to be tried by jury, or referred as provided in this Code."

In Prentice v. Freeman, 76 Okla. 260, 185 Pac. 87, this court said:

"In the trial of equity cases the court may call in a jury for the purpose of advising the court on questions of fact, and the court may adopt or reject their conclusions as to the same."

The court may exercise its own discretion as to interrogatories put to the jury in an equity case. No error is assignable on such interrogatories.

See, also, Wah-tah-noh-zhe v. Moore, 36 Okla. 631, 129 Pac. 877, wherein it is said that the court may adopt or reject the conclusions of the jury as it sees fit, for the whole matter must necessarily be left to him to determine, and instructions offered by the parties furnish no ground for appeal, and it is not only the right but the duty of the court in such cases to finally determine all questions of fact as well as of law.

It is therefore obvious that it becomes wholly immaterial, so far as the verdict is concerned, what the jury says or does, or what interrogatories are submitted to it, as the court is not bound thereby, and as the court may finally determine all questions of fact as well as of law, the calling of a jury savors almost of a useless proceeding.

We cannot concede, as contended for by defendant, that the verdict is a general one. Section 551, C. O. S. 1921, defines general and special verdicts as follows:

"General and Special Verdicts. The verdict of a jury is either general or special. A general verdict is that by which they pronounce generally upon any and all the issues either in favor of the plaintiff or defendant. A special verdict is that by which the jury finds facts only."

Millus v. Lowrey Bros., 63 Okla. 261, 164 Pac. 663; and Apache State Bank v. Daniels, 32 Okla. 121, 121 Pac. 237, cited by defendant, wherein the court held that in cases where a jury may not be had as a matter of right, the court, if it permits the impaneling of a jury to aid in matters of fact, cannot submit the case to it for a general verdict, are not in point. The jury had submitted to it but one question of fact as hereinbefore set forth. This question was not wholly determinative of the right of recovery, as in an equity proceeding the court might have disregarded the verdict, or adopting it as determinative of the original intention of the parties, the court could have found that because of laches or negligence on the part of the plaintiffs, they were not entitled to judgment, notwithstanding the verdict.

The next question presented by defendant challenging this court's attention presents a graver question. The trial court in rendering judgment sets forth the verdict of the jury, and then recites as follows: "And the court upon consideration of the verdict finds the issues herein in favor of the plaintiffs." The court evidently treated the verdict as a general verdict in favor of the plaintiffs, and proceeded to enter judgment upon the verdict. This the court is not empowered to do, but as hereinbefore set forth, it is the duty of the court to finally determine all questions of law and of fact in an equity proceeding, and the jury sits only in an advisory capacity.

In Apache State Bank v. Daniels, supra, a general verdict was returned, but the court in rendering judgment said:

"And the jury is now discharged from further consideration of said cause. And the court having carefully weighed the evidence, and being advised in the premises, approved the findings and verdict of the jury and accepts the advice of the jury as in its verdict contained, and renders judgment upon the verdict of the jury."

And this court said:

"As the trial judge treated the verdict as advisory, as he 'carefully weighed the evidence,' as he approved of the verdict, and as the responsibility rested upon him, we cannot say that this error in procedure has adversely affected a substantial right of the plaintiff." Citing Rankin v. Blaine County Bank, 20 Okla. 68, 93 Pac. 536, 18 L. R. A. (N. S.) 512.

In Millus v. Lowrey Bros., supra, this court held:

"It is error to submit an issue as to the existence of grounds for an attachment to the jury for a general verdict, instead of merely for special advisory findings of fact, if at all, and to base a judgment upon such general verdict, instead of upon the findings and opinion of the judge, in the decision upon a motion to discharge such attachment traversing the existence of such grounds. When the judgment on such motion follows, recites, and is in accord with such general verdict, and it does not affirmatively appear that the judge treated such verdict as merely advisory and gave such judgment upon his own findings and opinion, such judgment will be presumed to be based upon such verdict."

But this court further held in that case:

"Such error will necessitate a reversal only when upon an examination of the entire record, it appears that the same has probably resulted in a miscarriage of justice or violates a constitutional or statutory right."

In a long and unbroken line of decisions this court has held:

"In an action of purely equitable cognizance the Supreme Court will consider the entire record and weigh the evidence and cause to be rendered such judgment as the trial court should have rendered." Parks v. Sinai Oil & Gas Co., 83 Okla. 295, 201 Pac. 517; Reuck v. Green, 84 Okla. 131, 202 Pac. 790; Nowka v. West, 77 Okla. 24, 186 Pac. 220.

It will be well to bear in mind the rule so often announced and so firmly established by this court as follows:

"The law does not authorize the reformation of a written contract on the grounds of mutual mistake (i. e., a mistake by each of the parties thereto) unless the proof of such mutual mistake is clear and convincing." Muskogee Refining Co. v. Waters Pierce Oil Co. et al., 89 Okla. 279, 215 Pac. 766; Iron Mountain Oil Co. v. Edwards et al., 100 Okla. 4, 227 Pac. 150.

In Davis v. Keeche Oil & Gas Co., 89 Okla. 226, 214 Pac. 711, this court said:

"In order to justify a reformation of a contract, the evidence must be full, clear, unequivocal and convincing as to the mistake and its mutuality. Mere preponderance of the evidence is not enough. The proof must establish the facts to a moral certainty, and take the case out of the range of reasonable controversy."

It appears from the record the plaintiffs were joint owners of certain lands and defendant was, through its officer, L. A. Mor-

ton, securing oil and gas leases in Stephens county, some of these leases running for five years and some for ten years, and Morton wrote out three leases for the plaintiffs to sign. The particular lease involved in this action covered 40 acres, and England testified the agreement was for a five-year lease, and that he never made any agreement for a ten-year lease; that he was in Morton's office while Morton drew the lease; that he could read; that Morton presented the lease to him, and he had ample opportunity to examine the same. The record discloses the lease was filed for record and duly recorded in the office of the county clerk, and had been of record for more than four years prior to England's discovering it recited. ten years instead of five years; and this discovery only appears to have been made after one L. R. Baker desired leases on part of the England and Harrell lands, covered by the former leases to defendant, and when England and Baker went to Morton to see about having some of the lands released, so Baker could complete his block of leases, Morton produced the 40-acre lease, and there is no evidence or suggestion that it had been altered after having been signed by England and Harrell. Harrell's testimony is not very definite or convincing. He says England told him Morton wanted a five-year lease; he signed the lease and had ample opportunity to examine it before signing.

There was another lease made out the same day on 30 acres jointly owned by England and Harrell, and Harrell testifies that Morton paid $3 per acre "down money" for the 40 acres, and $3 per acre "down money" for the 30-acre lease, but as there was a question about the 30 acres being a homestead, Morton gave Harrell the 30-acre lease to take home and secure the signatures of the lessors' wives thereto. This 30-acre lease, although paid for, was never returned to Morton, and Harrell testified he carried it around until ne wore it out. He does not know whether the lease he carried around in his pocket for months was a five or a ten-year lease, as "he never paid much attention to it," but his idea was it was a five-year lease.

L. A. Morton testified he was secretary for the Teachers Conservative Investment Association, and had written many leases for his association. That plaintiffs came to him with leases on about 400 acres that they wanted him to sell for them; that he wrote out three leases on 30, 40 and 80 acres on the England and Harrell land; that some leases he had written for the defendant were ten-year leases and some five-year:

that the 40-acre lease was a ten-year lease for the reason he had a 10-year lease on section 6, immediately above the 40 in this particular section; that plaintiffs said "money was scarce and feed high and they wanted the down money" for that reason; that when England, Harrell and Baker came to see him about releasing or canceling some of defendant's leases, the 80 acres was released, and he showed them the 40-acre lease reciting the 10-year period; that he had never drilled on the 30-acre lease, although he had paid for it, but never received the lease signed by the wives of the plaintiffs, and the bonus or down money had never been returned.

It is true the testimony of Morton was not as positive as that of England and Harrell, but Morton testified that as secretary of the association, his duties were purely ministerial, and he wrote numerous leases, and always had to refer to his files before he could state positively whether a certain lease was for five or ten years. and that he wrote out the leases exactly in the terms agreed upon.

While courts of equity are ever ready to reform instruments where through fraud or mutual mistake such instrument does not speak the true agreement of the parties, nevertheless, equity cannot declare an absolute protectorate over all the citizens of this state, and act in a supervisory capacity in the attaching of the signatures of such citizens to an instrument. When men of mature age, able to read and write, possessing all their facilities, and under no legal disabilities, calmly sit down and attach their signatures to a written instrument. unambiguous in its terms. having had full and ample opportunity to examine the instrument, and after the instrument has been filed of record for a period of between four and five years, the one party, after being afforded an opportunity by a stranger to the lease to profit by its cancellation, the blind Goddess of Justice will slip the hoodwink from her eyes and on her equity side will peer beneath the surface and search out the true reason for desiring the reformation, and if it be found there was no mutual mistake. and that by the exercise of reasonable diligence the alleged mistake could have been discovered, but through the gross negligence or carelessness of the plaintiffs, the mistake, if any, occurred, equity can afford no relief, as equity rewards the vigilant and not the careless and negligent.

We do not mean to say that equity will not throw its protecting arm about an ad-

ult under certain circumstances in all their business dealings, as evidenced by our statutes providing for guardians of the person and property of adult incompetents, but where parties enter into a solemn agreement and reduce that agreement to writing, this agreement, in the absence of fraud, overreaching, or mutual mistake, must be upheld, and the business of the country, so far as evidenced by written instruments, stabilized, and equity, having regard for the sanctity of agreements, changes them only with reluctance, and requires proof that the written instrument does not express the real contract, and that the error, if any, was occasioned through mutual mistake, and the evidence must be clear, satisfactory, and free from doubt, and show that the party who seeks reformation was himself free from neglect in the making of the agreement. Heard v. Nancolis (Iowa) 175 N. W. 13.

Justice Story in his work on Equity Jurisprudence, 146, says:

"It is not, however, sufficient in all cases to give the party relief, that the fact is material; but it must be such as he could not by reasonable diligence get knowledge of when he was put upon inquiry. for if by such reasonable diligence he could have obtained knowledge of the fact, equity will not relieve him. since that would encourage culpable negligence."

In Wood v. Patterson, 4th Md. Ch. 254, the chancellor said:

"It is not, however, in every case, a mistake even of a material fact, that the court will grant relief, for if the mistake is the result of the party's carelessness or inattention, the court will not interfere in his behalf; its policy being to administer relief to the vigilant and to all parties upon the exercise of a reasonable degree of diligence. This may be regarded, we think, as the settled equitable doctrine in reference to the correction of alleged mistakes."

This court in Davis v. Keeche Oil and Gas Co., supra, said:

"If a mistake occurred, it was, in our opinion, occasioned by the plaintiffs' negligence in failing to read the lease before executing it, and under the circumstances a reformation will not be decreed." See 34 Cyc. 936.

In Houchin v. Auracher (Iowa) 190 N. W. 3, the court went so far as to say:

"Signing a written instrument without having read it is inexcusable negligence. notwithstanding it is done in reliance upon false representations as to its contents."

We do not care to follow the court to the extent of the language employed and cannot commit ourselves to such a rule, realizing that cases might arise where the circumstances, under which the false representations were made, might call for equitable relief, but we think it more in harmony with the well-established rules of equity to adhere to the principle announced by this court in Davis v. Keeche Oil & Gas Co., supra, and in Marshall v. Homier, 13 Okla. 264, 74 Pac. 368, and supported by numerous authorities, and so clearly stated in Persinger v. Chapman, 93 Va. 349, 25 S. E. 5, as follows:

"Equity will not extend its aid to one who has been guilty of culpable neglect. It requires that the parties who seek relief upon the grounds of mutual mistake shall have exercised at least the degree of diligence which may be fairly expected from a reasonable person."

And in Kerns-Gorsuch Bottle Co. v. Hart-Ford-Fairmont Co., 1 Fed. 318, the court said:

"One who approved a contract without reading it cannot claim a mistake warranting reformation."

Following what appears to be the universal rule, and an examination of the entire record disclosing the plaintiffs did not exercise the degree of diligence to be fairly expected of reasonable persons, but were in fact guilty of culpable negligence, we are of the opinion that the judgment of the trial court reforming the lease in conformity with the prayer of the petition was error, and the judgment of the trial court is therefore reversed and this cause remanded, with directions to the trial court to vacate its judgment for the plaintiffs, and to enter judgment for the defendant.

By the Court: It is so ordered.

Note.—See under (1) 21 C. J. p. 585 § 721; p. 591 § 725; p. 594 § 735. (2) 38 Cyc. p. 1869. (3) 34 Cyc. p. 984; 10 R. C. L. p. 300; 2 R. C. L. Supp. p. 1002. (4) 21 C. J. p. 88 § 64; 23 R. C. L. p. 321. (5) 4 C. J. p. 897 § 2867; 2 R. C. L. p. 202; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91.