## WALTER v. MYERS.

No. 34844. Feb. 26, 1952.

*241 P. 2d 393.*

Wise & Ivester, Sayre, for plaintiff in error.

Willingham & Fariss, Oklahoma City, for defendant in error.

GIBSON, J. We shall refer to the parties as they appeared in the trial court. Plaintiff in error was defendant.

Plaintiff instituted this action by filing her petition wherein it is alleged: that she was formerly the owner of a described quarter section of land in Beckham county, and that in January, 1946, she entered into an oral contract to sell the property to defendant for $3,500 reserving one-eighth of the oil, gas and other minerals in and under said property for a period of twenty years and as long thereafter as oil and/or gas was being produced from said property; that on January 28, 1946, she executed a deed and contract, being advised that the contract would serve to save defendant certain income taxes.

It is further alleged that the deed did not comply with the agreement be-

tween the parties in that it failed to contain the clause, following the reservation of mineral rights, "and as long thereafter as oil and/or gas was being produced from said premises in paying quantities", and that the omission was not discovered by plaintiff until late in the year 1947. Plaintiff further alleges that she then contacted defendant, before witnesses, when defendant acknowledged a mutual mistake of the parties, but asked time to think it over, but has neglected and refused to correct the error to meet the agreement and intention of the parties. Plaintiff alleged she had been put to expense and prayed reformation of the deed and that she have judgment for $1,000 actual damages and $10,000 punitive damages.

An amended petition was filed amplifying her allegations as to actual and punitive damages.

Defendant's answer was a general denial with admission of having entered into a written contract with plaintiff on January 28, 1946, and alleges that said written contract and deed expressed the true and complete contract of purchase.

The case was tried to the court and a jury. A verdict by the jury found for the plaintiff and that the deed and contract was a mutual mistake and should be reformed and further that plaintiff should recover of defendant the sum of $350 with 6 per cent interest from date of judgment. During the trial the court sustained a demurrer as to the claim for punitive damages.

Following the return of the verdict the court rendered a judgment reciting the verdict and approving the findings of the jury, and thereupon specifically found that there was a mutual mistake between the parties in execution of the deed and that plaintiff had sustained actual damages in the sum of $350, and rendered judgment accordingly. From this judgment and the order overruling a motion for new trial, defendant appeals.

In his petition in error defendant sets out error in the giving of certain instructions but in his brief he admits that this was an equity case and that the verdict of the jury was not binding on the trial court but advisory merely, and that in the last analysis the findings and decisions were those of the court and not the jury. Specifications of error in the giving of instructions were abandoned.

For reversal defendant urges that to warrant a reformation of a written instrument the mistake must be a mutual mistake and that the evidence necessary to support a reformation must be clear, full, decisive and convincing, and it is urged that the evidence of the plaintiff in this case was insufficient to sustain the judgment when measured by the well established rules.

On many points the evidence in this case was in sharp conflict and there was considerable evidence offered on points that were immaterial to the real issue. The parties were well acquainted with each other, owning adjoining lands and no misunderstanding had ever arisen between them prior to this controversy. Plaintiff was a widow and in poor health, and she decided to sell the farm which she had then owned for 17 years. It was advertised for sale. Defendant visited plaintiff at her home and made inquiry as to her terms. She testified that her price was $4,000 with a reservation of 40 acres royalty. She had sold 80 acres of the minerals. That defendant said he would not take it with a reservation of 40 acres as that would cloud his title. She refused to sell without reserving some of the royalty.

Plaintiff testified that defendant inquired if she would take some term royalty and mentioned a 20 year term; that she advised that if he would assume the $700 loan on the farm and pay cash for the balance she would deal on the 20-year term with the understanding that if there was no oil or gas produced on the place within the term she would turn back the place and

his title would not be clouded, but if oil and gas was produced it was to be hers so long as there was production. To this defendant replied that he wouldn't do that for any one else but he knew she had worked hard on the farm, and had reared her children there and that he would make the deal as she had suggested.

In giving this testimony plaintiff was corroborated by the testimony of one Mrs. Dolk, who was present during the negotiations.

In a suit for reformation of a deed it is competent to show the conduct and declarations of the parties just before and at the time of the execution of the instrument. Oklahoma City Federal Savings & Loan Ass'n v. Clifton, 183 Okla. 74, 80 P. 2d 283.

Later defendant came to her wanting to make a three-way trade, whereby he was to dispose of a farm he owned in Roger Mills county for $2,500 to apply on the purchase price of her farm. The parties met in a lawyer's office in Elk City where a three-party contract was drawn, wherein it was agreed that defendant would convey to plaintiff a farm he owned in Roger Mills county, reserving an undivided one-half interest in the minerals, and plaintiff was to convey her farm to defendant, reserving an undivided 1/8 interest in the minerals for a period of 20 years, defendant to assume the balance of a loan for $700 which plaintiff had on her farm; and plaintiff was to convey to the third party, J. W. Poston, the farm in Roger Mills county which defendant was conveying to her. The deal was to be completed within 30 days. The mentioned deeds were drawn. The office had no notary and plaintiff desired to have them taken to Judge Gilkerson, a practicing attorney, she said, for notarizing, while other witnesses said she wanted Gilkerson to examine the instruments. All papers were placed in escrow in a bank in Elk City. Plaintiff was given a deposit slip for the balance due to her.

Having conveyed the farm she did not thereafter see the instruments.

Plaintiff testified that she signed some papers but did not know that she had signed the contract until some time later when she was so advised by defendant and she went to the lawyer's office and obtained a copy; that she thought the contract was one between defendant and Poston for the sale of defendant's farm.

Plaintiff's deed to defendant made no mention of an existing mortgage to the School Land Department, or of the outstanding mineral deed or the oil and gas lease, although the several parties and the scrivener knew of their existence.

Plaintiff says that she did not discover the omission of the clause which would have continued the interest so long as oil or gas was produced, for more than a year. She was then living in New Mexico. That in February, 1948, she and a Mrs. McKinney met defendant on the street, and her testimony with respect thereto is as follows:

That after learning of the error of omission she returned to Elk City. She and Mrs. McKinney met defendant on the street and inquired if he remembered their deal and he replied in the affirmative. She testified:

"I said, 'If you remember how it was I had 20 acres of royalty and I was to turn the royalty back to the property in 20 years if it didn't produce any oil, gas or minerals, but it was my property as long as it produced.' Cleo said 'That is right, Mrs. Myres, if it isn't that way I will correct it because that is the way we traded.' "

In this testimony she was corroborated by Mrs. McKinney. She and Mrs. McKinney both testified that some time later they were sitting in an automobile in town and talked to defendant and plaintiff again asked him to correct the error, to which he replied, "Well, Mrs. Myers, I have decided I want the deed just like it is."

23

Defendant did not recall the conversation on the street; admitted conversing in the automobile but says that he told her he did not remember just how the deed was written but "whatever it was, that is the way it is."

Prior to these conversations oil was discovered on the farm formerly owned by plaintiff. At the time of the sale of the farm none of the parties knew that a well was to be commenced on the property.

Evidence was conflicting as to plaintiff being told at the time the instruments were executed that the provision was for a term royalty. The testimony of the scrivener was vague and indefinite on details of the conversation, his explanation being that he was busy in the draft of the instruments. The evidence reveals that defendant was the first to mention term royalty and that he employed the scrivener, and that he did most of the talking in outlining the details of the transactions.

It is admitted that although the parties knew of the aforesaid encumbrances on plaintiff's farm, they were not written in as exceptions and plaintiff thus signed a deed with a warranty that the property was free and clear of encumbrances. Although the existing mortgage was not mentioned in the deed, nevertheless defendant assumed it and deducted the amount from the agreed purchase price paid to plaintiff. If the deed was to have been carefully drawn it is apparent that the omissions of the exceptions of the mortgage, the oil and gas lease and the outstanding mineral deed were all mutual mistakes, as all were given consideration by the parties in closing the deal.

After considering all of the evidence the jury and the trial court found that there had been a mutual mistake of the parties in omitting from the deed a provision to the effect that plaintiff's rights to the minerals were to continue after the term of the reservation "so long thereafter as oil, gas or other minerals are being produced from said property."

"If in the conveyance of an undivided mineral interest in land, phrases and terms are used which, in legal effect, express a meaning different from that agreed upon so that the deed does not conform to the intention of the parties, equity will grant relief. And in such cases extrinsic evidence is admissible and may be considered by the trial court in order to ascertain the real agreement between the parties." Phillips v. Johnson, 202 Okla. 645, 217 P. 2d 520.

"An action for the reformation of a deed, based upon mistake of fact, is an action of equitable cognizance. The general rule is that when, because of a mistake of fact, an instrument does not express the true intention of the parties, equity will correct such mistakes unless the rights of third parties intervene." Smith et ux. v. Lindley et al., 202 Okla. 501, 215 P. 2d 566.

Defendant cites the following rule which has been repeatedly announced by this court:

"In order to justify a reformation of a contract, the evidence must be full, clear, unequivocal, and convincing as to mistake and its mutuality. Mere preponderance of the evidence is not enough. The proof must establish the facts to a moral certainty, and take the case out of the range of reasonable controversy." Davis v. Keeche Oil & Gas Co., 89 Okla. 226, 214 P. 711.

The same rule, in effect, is stated in Home Insurance Co. v. Akers, 96 Okla. 232, 221 P. 493; Hendrix v. Rinehart, 167 Okla. 621, 31 P. 2d 113; Setterstrom v. Phelan, 182 Okla. 453, 78 P. 2d 415; Teacher's Conservative Investment Ass'n v. England, 115 Okla. 298, 243 P. 137.

We would not depart from the foregoing rule in the consideration of cases involving the reformation of instruments. The question before us is whether or not the plaintiff met the required quantum of proof in the instant case. Here the proof was submitted to an advisory jury who returned a unanimous verdict holding that there was a mutual mistake of fact. Weighing the evidence and considering the verdict, the trial judge held the same. So far

104

there has been no reasonable controversy between the triers of fact.

In Harrell v. Nash, 192 Okla. 95, 133 P. 2d 748, we said:

"Evidence to sustain a judgment reforming a written contract must be clear, unequivocal, and decisive, but this does not mean that it must be uncontradicted; and the judgment of the trial court in such an action, reforming the contract, where the evidence is conflicting, should be given weight, and should be affirmed on appeal, unless the appellate court is satisfied that the standard of proof required has not been met and the conclusion reached is wrong."

And in commenting upon the rule announced, we said, in Hendrix v. Rinehart, supra:

"Another well-established rule of this court by which this record must be judged is that:

" 'In a case of purely equitable cognizance, the Supreme Court will review the testimony, but will not disturb the findings and judgment of the trial court, unless the same is clearly against the weight of the evidence.' "

We have carefully examined this record and we are unable to say that the trial court's judgment is against the clear weight of the evidence.

Judgment affirmed.

HALLEY, V. C. J., and WELCH, CORN, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.