Ernest NELSON and Florence Nelson, His Wife; Mary E. Schafer and C. A. Schafer, Her Husband, Plaintiffs in Error,

v.

Ruby K. DAUGHERTY, as Administratrix of the Estate of Elcia E. Coulter, Deceased; Ruby K. Daugherty, Arthur L. Coulter, and Lula J. King, Heirs at Law of Elcia E. Coulter, Deceased, Defendants in Error.

No. 38754.

Supreme Court of Oklahoma.

Oct. 4, 1960.

Rehearings Denied Dec. 13, 1960.

Sparks & Boatman, Woodward, for plaintiffs in error, Mary E. Schafer and C. A. Schafer.

Miles & Miles, Beaver, for plaintiffs in error, Ernest Nelson and Florence H. Nelson.

Holcomb & Holcomb, Buffalo, for defendants in error.

JOHNSON, Justice.

Ruby K. Daugherty as administratrix of the estate of Elcia E. Coulter, deceased, and for herself as an heir of the Elcia E. Coulter estate, and other heirs named in the caption as defendants in error (plaintiffs below) commenced this action on August 7, 1956, in the District Court of Harper County, Oklahoma, to quiet title to "(A)n undivided ½ interest in the oil, gas and other minerals and mineral rights in and under the NW¼ of Section 22, Township 26 N, Range 25, W.I.M. in Harper County, Oklahoma," and for the reformation and correc-

tion of (two certain) warranty deeds from Elcia E. Coulter and Arizona Coulter, husband and wife, to Mary E. Schafer, to conform to the true intention of the parties.

The trial resulted in a judgment and decree reforming the deeds and quieting plaintiffs' title.

The Nelson defendants and the Schafer defendants filed separate motions for a new trial, and from the orders overruling same they have duly appealed to this court.

The Nelson defendants challenge the sufficiency of the plaintiffs' petition and the sufficiency of the evidence to support the trial court's judgment.

The Schafer defendants question the admissibility of parol evidence to reform a written instrument, the sufficiency of the evidence to support the judgment of the trial court and the statute of limitation as applied to the plaintiffs' cause of action.

Plaintiffs alleged in their petition that Elcia E. Coulter acquired fee simple title to the above described land, including all the oil, gas and minerals and mineral rights; that on June 9, 1933, he agreed to sell and convey this land to Mary E. Schafer, but reserving to himself a one-half (½) undivided interest in the oil, gas and other minerals in and under said land, and Mary E. Schafer in purchasing same agreed that Elcia E. Coulter should reserve to himself, his heirs and assigns said one-half (½) undivided interest in the oil, gas and other minerals in and under said land; that Elcia E. Coulter and Mary E. Schafer engaged C. A. Lake as a scrivener to prepare for them a deed to be executed by Elcia E. Coulter and his wife to Mary E. Schafer, and informed the said C. A. Lake that Elcia E. Coulter was reserving a one-half (½) undivided interest in the oil, gas and other minerals and instructed him to prepare said deed to include a proper clause or provision reserving unto said grantors one-half (½) of the oil, gas and other minerals; that by the mistake of C. A. Lake as scrivener and by mutual mistake of the said Elcia E. Coulter and his wife, grantors, and the said Mary E. Schafer, grantee, instead of containing a clause or provision reserving a one-half (½) interest in the oil, gas and other minerals in Elcia E. Coulter, contained an erroneous provision in the habendum clause of said deed, to-wit:

"Except an undivided one-sixteenth (⅟₁₆) interest in all the oil, gas and mineral rights to said land, said one-sixteenth interest is not conveyed to the grantee."

That said deed was duly filed for record in Harper County, Oklahoma, on February 14, 1934; that after the execution of said deed on June 9, 1933, but before the recording of said deed on February 14, 1934, Elcia E. Coulter and his wife, at the request and for the benefit of the grantee Mary E. Schafer, obtained a loan on said land from the Land Bank Commissioner to take up an existing loan on the land. This mortgage was dated November 1, 1933, and was recorded November 10, 1933; that in order to validate this mortgage, on March 22, 1934, Elcia E. Coulter and his wife executed an additional deed to Mary E. Schafer, and that this deed by the mutual mistake of the grantors and the grantee therein instead of containing a proper clause or provision reserving an undivided one-half interest in the oil, gas and other minerals in Elcia E. Coulter contained identically the same provision copied from the former deed dated June 9, 1933; that this deed was filed for record on March 22, 1934.

The plaintiffs alleged that neither of the aforesaid deeds expressed the intention of the parties thereto; that it was the intention and contract of the parties that Elcia E. Coulter reserved a one-half interest in the oil, gas and other minerals, and that the provision in each of said deeds wherein there was excepted and reserved a ⅟₁₆ in the oil, gas and other minerals was a mutual mistake of the grantors and the grantee, and that each of said deeds should be corrected and reformed to show that Elcia E. Coulter reserved a one-half interest in the oil, gas and other minerals in said land. Plaintiffs further alleged that on November 4, 1944, Mary E. Schafer and C. A. Schafer, her husband, sold and conveyed

said land by a warranty deed to W. R. Salsman and therein excepted from the right, title and interest in said land thereby conveyed "one-half of all oil, gas and other mineral rights which have been previously conveyed," and that thereby W. R. Salsman became the owner of the surface and one-half of the oil, gas and minerals. This deed was recorded in Harper County on December 28, 1944.

Plaintiffs further alleged that by the execution and delivery of this deed Mary E. Schafer acknowledged and ratified her previous contract with Elcia E. Coulter wherein the said Elcia E. Coulter had reserved a one-half (½) interest in the said oil, gas and minerals in and under said land. Plaintiffs further alleged that on October 16, 1946, W. R. Salsman and his wife sold the land to Ernest Nelson and Florence Nelson, his wife, and conveyed the same to them by a warranty deed and in said deed did except from the interest conveyed as follows:

"Except minerals reserved by Mary E. Schafer and C. A. Schafer in deed to W. R. Salsman, recorded at 27 deeds, page 416, records of Harper County, Oklahoma."

and that thereby Ernest Nelson and Florence Nelson, his wife, became the owners as tenants in common of the surface and a one-half (½) undivided interest in the oil, gas and minerals in and under said land. This deed was filed for record on October 17, 1946.

It is further alleged that Elcia E. Coulter died October 31, 1955, intestate and left surviving Ruby K. Daugherty, Arthur L. Coulter and Lula J. King, plaintiffs herein, as his sole heirs, and that plaintiff Ruby K. Daugherty is administratrix of his estate; that the said Elcia E. Coulter died seized of the following described interest in real estate:

"A one-half (½) undivided interest in the oil, gas and other minerals and mineral rights in and under the Northwest Quarter (NW¼) of Section Twenty-two (22) in Township Twenty-six (26) North, Range Twenty-five (25) West of the Indian Meridian in Harper County, Oklahoma"

and that said interest is owned by the plaintiffs Ruby K. Daugherty, Arthur E. Coulter and Lula J. King, subject to administration of the estate of Elcia E. Coulter, and that the same is now in possession of the administratrix for purposes of administration.

Plaintiffs petitioned that the defendants be required to come into court and set up their claims and prayed judgment quieting the title to said one-half (½) undivided interest in the oil, gas and other minerals under said land in the heirs of Elcia E. Coulter, deceased, subject to administration of his estate, and that the defendants be forever barred and enjoined from claiming or asserting any right, title or interest adverse to the plaintiffs, and plaintiffs prayed that the warranty deed from Elcia E. Coulter and Arizona Coulter to Mary E. Schafer duly recorded in Harper County, Oklahoma, be reformed and corrected to show that Elcia E. Coulter reserved a one-half (½) undivided interest in the oil, gas and other minerals and mineral rights in said land, and for other proper relief.

The defendants Ernest Nelson and Florence Nelson in their amended answer denied everything in the plaintiffs' petition not admitted, and alleged that Elcia E. Coulter conveyed the aforesaid land in question in Harper County, Oklahoma, to Mary E. Schafer in exchange for a 160 acre tract of land in Beaver County, Oklahoma, and that the respective deeds which they exchanged contained identical provisions, to-wit:

"Except an undivided 1/16 interest in all the oil, gas and mineral rights to said land, said 1/16 interest aforesaid is not conveyed to the grantee"

and they denied that there was any mistake of the scrivener who prepared the deeds; and as an alternative defense, the Nelsons alleged that in the event there was a mutual mistake that any cause of action based thereon for reformation of the deeds was barred by the statute of limitation.

The plaintiffs replied denying everything in the answer of the Nelsons inconsistent with their petition. Thereafter the Schafer defendants filed an amended answer and cross-petition on March 18, 1957, in which they denied everything in the plaintiffs' petition not admitted and alleged that Coulter had actual and constructive knowledge of the contents of the aforesaid two deeds sought to be reformed; that plaintiffs could not by oral testimony reform or alter the deeds and that any action to do so was barred by the statute of limitation; that Coulter conveyed said real estate to Mary E. Schafer in consideration of the conveyance by Schafers to Coulter of a 160 acre tract of land in Beaver County, and that Coulter reserved a $\frac{1}{16}$ interest in the oil, gas and minerals in the Harper County land and that Mary E. Schafer reserved a $\frac{1}{16}$ interest in the oil, gas and minerals in the Beaver County land, and that thereafter in a case in the District Court of Beaver County, Oklahoma, it was adjudged that Mary E. Schafer had reserved a $\frac{1}{16}$ interest in the minerals in the Beaver County land; and the plaintiffs were therefore estopped to claim more than a $\frac{1}{16}$ interest in the minerals in the Harper County land.

In reply to the Schafers' answer and in answer to Schafers' cross-petition, plaintiffs denied everything inconsistent with their petition and then admitted that as a part of the consideration for the purchase of the Harper County land that Mary E. Schafer and C. A. Schafer conveyed to Coulter a 160 acre tract of land in Beaver County, but specifically denied that Mary E. Schafer and C. A. Schafer were to reserve a $\frac{1}{16}$ interest in the minerals in the Beaver County land, but alleged that Mary E. Schafer did reserve one-half mineral interest in said Beaver County land, and that by the mutual mistake of the parties and the scrivener, the deed contained the identical provisions as the deed from Coulter to Mary E. Schafer to the Harper County land, to-wit:

"Except an undivided one-sixteenth interest in the oil, gas and mineral rights to said land. Said one-sixteenth interest aforesaid is not conveyed to the grantee."

Plaintiffs then alleged that subsequently Elcia E. Coulter treated the same as a reservation by Mary E. Schafer of a one-half ($\frac{1}{2}$) interest when as a grantor he sold the Beaver County land to one T. E. Trekell on November 7, 1934, the deed from Coulter to Trekell containing the following provision:

"Also it is understood and agreed by and between the parties hereto that grantor has sold one-half ($\frac{1}{2}$) of the royalty on the above described land to Mary Schafer, and grantee is accepting title with the understanding that one-half the royalty has been sold."

Plaintiffs then alleged that the judgment in case number 7974 in Beaver County is not res judicata of anything in the present action, and that they are in nowise estopped thereby.

Upon the issues thus joined the case was tried and judgment rendered and appeal perfected as hereinbefore stated.

The parties stipulated and agreed that all the plaintiffs' exhibits, including deeds referred to in their pleadings be admitted in evidence, and that Elcia E. Coulter was the owner of the full and undivided fee including all mineral rights on June 9, 1933, of the NW¼, Sec. 22, T. 26, R. 25, W.I.M. in Harper County, Oklahoma; that said land was then subject to a real estate mortgage to Riggs Brothers, and that this mortgage was released of record on January 15, 1934; that said land was not subject to any oil and gas lease until December 8, 1951, when it was leased for oil and gas purposes by Ernest Nelson and his wife to Roy Reed for ten years.

The plaintiffs then adduced the testimony of the plaintiff Ruby K. Daugherty who testified that Elcia E. Coulter died in 1955; that she was appointed the administratrix of his estate in Harper County, Oklahoma, in July, 1956; that Coulter left as his sole heirs Ruby K. Daugherty, Arthur E. Coulter and Lula J. King, and that at the time

of his death he was the owner of a one-half interest in the oil, gas and minerals in and under the land in question; that the same was an asset of his estate; that nine years before he died Elcia E. Coulter was in bad health and that for the last three years of his life he was unable to speak or know things, and that during his illness his daughter, Lula J. King, took care of his business; that the first time the plaintiffs knew that the defendants were claiming any interest in said land adverse to the plaintiffs was in the spring of 1956 when they received an offer of lease from the Cities Service Oil Company.

The plaintiffs then adduced the testimony of Charles Albert (C. A.) Lake who testified that he had lived in the town of Laverne, Oklahoma, for over 46 years; that during that time he had been in the insurance and real estate business; that he was a carpenter and surveyor and was a notary public and had been a member of the Town Board of Trustees, and a justice of the peace; that he maintained an office, and that when there was no attorney in town the people of the community had come to depend upon him to prepare deeds and other documents for them; that on the 9th day of June, 1934, he knew Elcia E. Coulter and his wife, Arizona, and C. A. Schafer and his wife, Mary; that he was familiar with the land known as the Elcia E. Coulter place, and that on that date Mr. and Mrs. Coulter and Mr. and Mrs. Schafer were present in his office and requested him to make a deed from Elcia Coulter and Arizona Coulter to Mrs. Schafer, and that he was informed by Mr. Coulter that he wanted to reserve an undivided one-half interest in the minerals, and that Mr. and Mrs. Schafer were present at that time and made no objections to this reservation; that he was of the opinion and it was his best judgment that the way to reserve one-half undivided interest was to describe it as 1/16, and this he did in the deed from the Coulters to Mrs. Schafer.

The plaintiffs' witness, W. R. Salsman, in a deposition testified that at one time he owned the land in question which he purchased from C. A. Schafer and Mary E. Schafer, his wife; that he first dealt with Walter Mulberry, with whom the Schafers had listed the farm for sale; that Mulberry said that one-half the minerals were gone from the land; that to close the deal he met with Mr. Schafer in the First National Bank at Laverne, Oklahoma, and that Mr. Tom Sumpter, cashier of the bank, Mr. Mulberry and one Tom Eads were present; that at that time a written contract for the sale of the land was entered into between him and the Schafers; that the contract was prepared by Tom Sumpter, an officer of the bank, at the direction of Mr. Schafer, who was representing his wife, Mary E. Schafer, and by direction of Mulberry, the real estate agent, and of Salsman; that at the time Mr. Schafer said that one-half of the minerals on the place were gone, and that Schafers were not reserving any part of the minerals. The written contract of sale was identified and introduced in evidence as plaintiffs' Exhibit A, and said written contract for the sale of said land from Schafers to Salsman contained the following provisions:

"It is understood that one-half of the royalty under land has been previously conveyed."

That Tom Sumpter, cashier of the bank, also prepared the deed from Schafers to Salsman, in evidence as plaintiffs' Exhibit B. Salsman testified that he exchanged the land with the defendants Ernest Nelson and Florence Nelson for other land in Beaver County, Oklahoma; that during the negotiations he informed defendant Nelson that one-half of the minerals on the land were gone, and that to balance the trade he permitted Nelsons to retain one-half of the minerals on one of the Beaver County 160 acre tracts that were transferred to him.

Another witness for plaintiffs, Sarah Osa Salsman, testified by deposition that she was the wife of W. R. Salsman; that she was present on one occasion during the negotiations between her husband and the Schafers for the sale of the land in question, and that Schafers informed them that one-half of

the minerals were gone from the land; that after the contract had already been signed Mr. and Mrs. Schafer came by their place and stopped a few minutes to make arrangements to go and complete the deal, and at that time Mr. Schafer talked a few minutes about the place to them and told them that one-half of the mineral rights were gone because Mr. Coulter reserved them, and that they would get only one-half of the mineral rights.

The witness further testified that she took part in the negotiations for the exchange of said land from the defendants Nelson for other land in Beaver County, and that the Nelsons were informed that one-half of the minerals on the land were gone, and they were permitted to keep an equal amount of minerals on the Beaver County Land to compensate for the one-half which was gone. Her exact words are:

"Q. What did you tell the Nelsons regarding the status of the mineral rights on the place that you were trading them?

\*     \*     \*     \*     \*     \*

"A. We were looking over the house and Mrs. Nelson, her father-in-law and her mother-in-law and I, and the men folks were outside, and in discussing the place, Mrs. Nelson said since half of the royalty is gone the mineral rights or whatever you want to call it is gone on that place down there, I think you ought to give half of the minerals on this place, and I said, no, I won't do it but I will tell you what I will do, Florence, I will give you, if Bill is willing, eighty acres of royalty. That will make you an equal 160 acres."

Plaintiffs' witness T. W. Sumpter testified that he was cashier of the First National Bank in Laverne; that he was acquainted with C. A. Schafer and W. R. Salsman, and that on November 1, 1944, he prepared a contract of sale between C. A. Schafer and W. R. Salsman; that in this instrument his attention was called to the clause in that contract, and it was understood that one-

half of the royalty under this land had been previously conveyed, and that he was told by both parties to put that clause into the deed. Mr. Sumpter then identified the deed from Mary E. Schafer and C. A. Schafer to W. R. Salsman, which was marked as plaintiffs' Exhibit B and attached to the deposition of W. R. Salsman, and testified that he prepared the same for Mary E. Schafer and C. A. Schafer, and that in that instrument he had excepted one-half of all oil, gas and other mineral rights which had been previously conveyed, and that instructions to so place this exception in the deed were from Mary or C. A. Schafer, and that he prepared the deed in pursuance with instructions from both parties, and that they both were in his presence when the deed was executed.

The witness Sumpter then testified regarding the use of the terms "royalty" and "mineral rights"; that he did not make any distinction between royalty and mineral rights, and that he considered the two words synonymous.

The Schafer defendants offered no testimony and no evidence of any kind except the deed from W. R. Salsman and wife to Ernest Nelson and Florence Nelson and a certified copy of the journal entry in another case in the District Court of Beaver County, Oklahoma, involving other lands in another county.

The Nelson defendants offered the testimony of the defendant Ernest Nelson who testified that they were the present owners of the NW¼ of Sec. 22–26–25 W. I. M., Harper County, Oklahoma; that they acquired the same in 1946 by trading 480 acres of land in Beaver County, Oklahoma, to W. R. Salsman for it; and that at the time of making the trade there was no discussion about mineral rights, and he made no inquiry whatsoever as to whether any of the mineral rights were gone, but at the time the deeds were exchanged he did reserve eighty acres of minerals on the Beaver County land; that he did not have the abstract examined by an attorney, but about two months after the trade he had the abstract examined by a banker

who pointed out that in one transaction ⅟₁₆ had been reserved and in another transaction ½ had been reserved, but he did nothing about it.

The trial court found that there had been a mutual mistake of the parties in describing the interest retained in the minerals under the lands conveyed and considered herein.

In such case we have, following our earlier cases, held in Fabbro v. Reese, 206 Okl. 655, 246 P.2d 324, 325, in the syllabus as follows:

"1. In an action for the reformation of a deed or contract of sale, parol evidence is admissible to show the parties' intent and mutual mistake.

"2. Evidence to sustain a judgment reforming a written contract must be clear, unequivocal, and decisive, but this does not mean that it must be uncontradicted; and the judgment of the trial court in such an action, where the evidence is conflicting, should be given weight, and should be affirmed on appeal, unless the appellate court is satisfied that the standard of proof required has not been met and the conclusion reached is wrong."

In the body of the opinion this court said:

"In Harrell v. Nash, 192 Okl. 95, 133 P.2d 748, 750, we said:

" 'Evidence to sustain a judgment reforming a written contract must be clear, unequivocal, and decisive, but this does not mean that it must be uncontradicted; and the judgment of the trial court in such an action, reforming the contract, where the evidence is conflicting, should be given weight, and should be affirmed on appeal, unless the appellate court is satisfied that the standard of proof required has not been met and the conclusion reached is wrong.'

"In Crabb v. Chisum, 183 Okl. 138, 80 P.2d 653, we considered a case where the factual situation was very similar to that involved in the instant case.

The mistake in the notes in that case due to an error on the part of the scrivener, which was not noticed by the plaintiff until long subsequent to the date of the execution of the notes. In that case we affirmed the judgment of the trial court granting reformation, although the evidence was conflicting, pointing out that the trial court, which had the witnesses before it and had an opportunity to observe their demeanor and to determine their credibility, had decided this issue in favor of the plaintiff."

In Walter v. Myers, 206 Okl. 100, 241 P.2d 393, 394, paragraphs 1, 2 and 3 of the syllabus it was stated:

"1. In a suit for reformation of a deed it is competent to show the conduct, declarations and statements of the parties just before and at the time of the execution of the instruments.

"2. An action for the reformation of a deed, based upon mistake of fact, is an action of equitable cognizance. The general rule is that when, because of a mistake of fact, an instrument does not express the true intention of the parties, equity will correct such mistake unless the rights of third parties intervene.

"3. Evidence to sustain a judgment reforming a written contract must be clear, unequivocal, and decisive, but this does not mean that it must be uncontradicted; and the judgment of the trial court in such an action, reforming the contract, where the evidence is conflicting, should be given weight, and should be affirmed on appeal, unless the appellate court is satisfied that the standard of proof required has not been met and the conclusion reached is wrong."

And in the body of the opinion this court said:

"In Harrell v. Nash, 192 Okl. 95, 133 P.2d 748, 750, we said: 'Evidence to sustain a judgment reforming a written .contract must be clear, unequivocal,

and decisive, but this does not mean that it must be uncontradicted; and the judgment of the trial court in such an action, reforming the contract, where the evidence is conflicting, should be given weight, and should be affirmed on appeal, unless the appellate court is satisfied that the standard of proof required has not been met and the conclusion reached is wrong.'

"And in commenting upon the rule announced, we said, in Hendrix v. Rinehart, supra: (167 Okl. 621, 31 P.2d 115.) 'Another well-established rule of this court by which this record must be judged is that: "In a case of purely equitable cognizance, the Supreme Court will review the testimony, but will not disturb the findings and judgment of the trial court, unless the same is clearly against the weight of the evidence." ' "

■ The defense of the statute of limitation interposed in this case is without merit. No evidence was offered as to the statute of limitation. Only the unexplored mineral interests are involved in this action. The mistake which the plaintiffs seek to reform is a mistake in the legal effect of mineral reservations. In such case the statute does not begin to run against an equitable right to reform a deed (before or) until the legal effect is questioned or disputed. This question was an issue under identical circumstances in the case of Good v. Cohlmia, Okl., 330 P.2d 588, 589. Therein this Court said:

"In urging, under their first proposition of error, that plaintiffs' action is barred by limitations, defendants rely on Hoskins v. Stites, 182 Okl. 455, 78 P.2d 413, and Mundy v. Dependent School District No. 32, Okl., 272 P.2d 447, for the applicability of the five-year period prescribed by Tit. 12 O.S.1951 § 95(6); and point to the fact that the action was 'brought more than 30 years' after the execution and delivery of the deed sought to be reformed, and to the undisputed testimony of the plaintiff, Frank Cohlmia, that

he knew at the time the instrument of conveyance was delivered to him in November, 1926, that it described the interest therein conveyed as 'One-sixteenth', rather than 'One-half.' Defense counsel argue that this latter testimony 'established that plaintiffs were aware of the purported error from the very day the deed was executed. * * *', but failed to take any action concerning it until many more than five years thereafter. We think this statement indicates misapprehension of the testimony referred to. While it cannot be denied that from the time the language sought to be reformed was placed in the deed in question, both parties thereto knew that it was there, yet, as hereinbefore shown, it was only a short time before they commenced this action, that plaintiffs learned that they (and Good, too) were mistaken in its legal effect—in believing that, by the described transaction, they had obtained an undivided one-half, rather than a one-sixteenth interest. In the situation thus presented, we think this case is analogous, in this respect, to the situation described in Harrison v. Eaves, 191 Okl. 453, 130 P.2d 841, 844, as follows:

" 'The claim of limitation and laches rests upon the facts that there was some evidence to show that plaintiff knew or should have known of the typographical error with respect to the range number given in the trust agreement. While it is not clear just when this first came to the attention of the plaintiff, the evidence shows that all parties interested in the trust had proceeded on the presumption that the agreement correctly set forth the property involved and that the trustee had at all times dealt with the lands in Range 3 W and had faithfully performed the duties of his trust and had never repudiated the same. Under these circumstances even though plaintiff knew or was charged with knowledge of the typographical error in the

instrument no statute of limitations would begin to run thereon so long as the trust was being recognized and performed in accordance with its intent and purpose; * * *'.

"* * * We therefore hold, as the trial court did, that this action was not barred by the five-year period of limitations asserted as a defense herein."

■ And in the first paragraph of the syllabus of the Good v. Cohlmia case, supra, the rule is stated thusly:

"Ordinarily the statute of limitation does not begin to run against an equitable right to reform a deed, on account of mutual mistake as to its legal effect, before such effect is questioned or disputed."

■ In the case of Hudson v. Smith, 171 Okl. 79, 41 P.2d 861, 864, there was involved a deed wherein the plaintiff deeded the land and 15/16ths of the oil and gas under it to the defendant. In plaintiff's petition it was alleged that the deed was accompanied by verbal statements to the effect that the 1/16th of the oil and gas so reserved should and did have the legal effect of a reservation of one-half of the usual or customary royalty. The deed in question was executed in 1919, and the suit was not commenced until 1933, and disposing of the contention of the action being barred by limitations the Court said:

"We know of no statute in this state that bars the plaintiff's action. The defendants claim that since the deed was executed in 1919, and suit not commenced until 1933, the action is barred. The statute could not commence to run until plaintiff became aware of a hostile claim, or a dispute as to his interest. The petition alleges that no hostile claim arose until less than one year prior to the commencement of the action. The plaintiff's right to an equitable adjudication of his title was a continuing one, and no statute of limitations could commence running until an adverse claim arose. Robertson v. Battles, 97 Okl. 54, 221 P. 1002."

From an examination of the record we conclude that the judgment is not against the clear weight of the evidence.

Judgment affirmed.

WILLIAMS, V. C. J., and WELCH, HALLEY, BLACKBIRD, JACKSON, IRWIN and BERRY, JJ., concur.