Nettie J. MALOY, Plaintiff in Error,

v.

M. M. SMITH and Elder Smith, husband and wife, Defendants in Error.

No. 36556.

Supreme Court of Oklahoma.

April 14, 1959.

Rehearing Denied July 21, 1959.

Wilbert G. Smith, Oklahoma City, for plaintiff in error.

George Bingaman, Purcell, for defendants in error.

JACKSON, Justice.

The trial court entered judgment against the plaintiff, Nettie J. Maloy, on her peti-

tion to quiet title and in favor of defendants, M. M. Smith and Elder Smith, on their cross-petition to reform a deed and to quiet title. Plaintiff appeals.

The primary issue is presented by plaintiff's contention that the statute of limitations had barred defendants' cross-action for reformation. The action was commenced in 1953. On October 15, 1940, the defendants executed a warranty deed conveying their farm to plaintiff's predecessors in title, J. B. Shannon and Lillian Georgia Shannon. There appeared in the granting clause the following:

"Except: An undivided one-half (½) interest in and to one-eighth (⅛) of the total production of all oil and/or gas, or other minerals, which may be produced from said land, it being specifically understood that the Grantees herein, as such joint tenants or the survivor or the heirs or successors of the survivor shall have full right to lease for oil and/or gas, or other minerals and collect all lease bonuses and lease rentals for their own use and benefit; * * *."

Defendants' evidence tended to show that by the terms of the original agreement they were to reserve an undivided one-half of the minerals rather than a non-participating perpetual royalty interest; that one deed was prepared, but not executed, which properly contained a reservation of one-half the minerals; that Dr. Shannon subsequently prepared another deed, ostensibly for the purpose of inserting a survivorship clause, and advised defendants that otherwise the new deed conformed to the oral agreement; that defendants, without reading the deed and relying upon such representations, executed the deed which in fact reserved a lesser interest than agreed upon.

Dr. Shannon testified that the second deed which the Smiths executed fully conformed to the parties' oral agreement; however in decreeing reformation and quieting title in favor of the defendants, the trial court necessarily found that the deed did not express the true agreement of the parties.

In 1942 the Shannons conveyed the farm to plaintiff and her husband, Pat Maloy, as joint tenants. Pat Maloy handled the details of this transaction. He had actual knowledge that the Smiths were claiming one-half of the minerals prior to the time he and plaintiff acquired title. The Shannon deed to the Maloys contained an exception phrased in substantially the same language as the reservation in the Smith deed to the Shannons. Pat Maloy is now deceased and plaintiff succeeded to his interest. Plaintiff brought this action to quiet title in 1953. The claim that there was a cloud on plaintiff's title was apparently based upon defendants' assertion that they owned one-half of the minerals in place rather than *only* a royalty interest as set forth in the deed.

The trial court entered judgment reforming the deed so as to vest in defendants a one-half interest in the minerals in place, and quieted their title to same.

Plaintiff contends that if the evidence was sufficient to justify reformation the right to reformation was barred by the statute of limitations.

The first question for determination is whether the statute of limitations is applicable.

■ We have heretofore held that the right of an owner in possession to remove a cloud from his title is a continuing right and never barred by limitations. Whitehead v. Bunch, 134 Okl. 63, 272 P. 878. This same rule generally applies in favor of both plaintiffs and defendants even though it is necessary to reform a deed regular on its face before title can be quieted, *if* the party seeking reformation has been in continuous, peaceable, and uninterrupted possession since the execution of the instrument. In Hoskins v. Stites, 182 Okl. 455, 78 P.2d 413, it is held in the second paragraph of the syllabus:

"The statute of limitation cannot be pleaded as a defense to an action for

reformation of a deed for mistake, if the party proceeding has been in continual, peaceable, and uninterrupted possession of the premises since the time of the execution of the instrument."

However, in Easley v. Ashton, 203 Okl. 205, 219 P.2d 199, we held that the statute of limitations was applicable to an action to quiet title to a mineral interest where it was necessary to cancel a mineral deed, regular on its face, before title could be quieted. In that case the court did not discuss the question of possession, but as a matter of fact the opinion discloses that the plaintiff, Frank M. Easley, who sought to cancel the mineral deed, was the owner of the surface. Nevertheless, we held that the statute of limitations ran against his right to cancel. This was tantamount to holding that one is not in possession of minerals when the title stands in someone else's name (absent leasing or drilling operations), at least insofar as the effect of possession or the lack thereof bears upon the applicability of the statute of limitations in an action to reform or cancel a deed. In Bruce v. Exchange Royalty Co., 177 Okl. 419, 60 P.2d 748, the plaintiffs had previously executed a mineral deed in favor of defendant. They later brought an action to cancel based upon fraud alleging in their petition that the minerals had been in their continuous possession. We affirmed the trial court's action in sustaining a demurrer to plaintiffs' petition, based upon limitations, despite plaintiffs' allegation that they were in possession.

■ Defendants contend that they have been in the continuous and peaceable possession of the controverted mineral interest, and therefore the statute of limitations did not run against their right to reform. The controverted mineral interest is the difference between one-half of the minerals in place and a one-half nonparticipating royalty interest. This difference includes the right to lease and collect bonuses and delay rentals. Defendants have done nothing towards reducing the minerals to possession. Title to the controverted mineral interest stands in plaintiff's name. A deed procured through fraud, inequitable conduct or mutual mistake is not void but voidable. See Skinner v. Scott, 29 Okl. 364, 118 P. 394, and Terrill v. Laney, 200 Okl. 308, 193 P.2d 296. The reservation is not ambiguous. Defendants reserved only a non-participating royalty interest, with the right in the grantees to lease and collect all bonuses and delay rentals. We do not think it can be said defendants are in possession of the controverted interest.

■ The rationale of the rule that the statute does not run against one in possession is that if one is asserting peaceable dominion over and obtaining the benefit from that which he claims he acquired by the conveyance in question, he is entitled to assume that the other party to the instrument is acquiescing in his claim.

In Hoskins v. Stites, supra, we quoted from Barrows v. Alford, 129 Okl. 265, 264 P. 628, wherein it is held in the first paragraph of the syllabus:

"Considering, without deciding, that section 185, subd. 1, C.O.S.1921 [12 O.S.1951 § 95], is the particular statute of limitations applicable to an action for reformation of a deed for the conveyance of real estate (the parties having so treated it), the five-year period of limitation, so fixed, may be tolled by the act of the beneficiary of the statute, and to the extent of time there is granted to the party sought to be charged with the penalty of the statute, all rights and benefits and enjoyments of the subject-matter of the litigation."

In the last cited case the grantor had reserved one-half of the minerals, but had paid *all* subsequently accruing rentals to the grantee. We held that this action by the grantor had lulled "the plaintiff into a sense of security by conceding the rights he now seeks to declare" so limitations did not run against the plaintiff's right to reform the deed to show a reservation of only one-half of the royalty.

In the instant case it does not appear that Shannons or Maloys did anything to lull defendants into a sense of security, and whatever sense of security they might have derived from being the record owner of one-half of the royalty would certainly not cause them to feel secure about their claimed ownership of any additional interest in the minerals.

■ Defendants place reliance upon cases holding that the owner of the surface cannot claim adverse possession of severed minerals, absent overt acts towards reducing, same to possession. This is a salutary principle of law and would justify a conclusion that the owner of severed minerals is in constructive possession of same, but absent other facts which would cause him to believe that his claimed interest was conceded, he is obviously in possession of no more than specifically described in the conveyance. It follows that in the instant case the defendants were not in possession of the controverted mineral interest, even if it is assumed that they were in possession of the designated royalty interest. This conclusion makes it unnecessary to say whether or not the owner of a perpetual non-participating royalty interest owns a severed interest in the minerals in place.

Defendants invite our attention to Hudson v. Smith, 171 Okl. 79, 41 P.2d 861, 864. In that case the plaintiff brought a suit to reform a deed contending that a reservation therein in his favor of one-sixteenth of the minerals was intended to have the legal effect of a reservation of one-half the royalty. The deed was executed in 1919, and suit for reformation was not commenced until 1933. The court said:

"* * * The petition alleges that no hostile claim arose until less than one year prior to the commencement of the action. The plaintiff's right to an equitable adjudication of his title was a continuing one, and no statute of limitations could commence running *until an adverse claim arose.* Robertson v. Battles, 97 Okl. 54, 221 P. 1002." (Emphasis ours.)

It is evident from a reading of the syllabus in Robertson v. Battles that it is not in point.

If it can be said that Hudson v. Smith stands for the proposition that the statute does not run against the right of a mineral interest owner out of possession to reform an unambiguous instrument, regular on its face, so as to obtain a greater interest in the minerals than shown in the instrument, then it has been overruled in effect by our decision in Easley v. Ashton, supra, and Bruce v. Exchange Royalty Co., supra. However, the court did not hold that plaintiff was entitled to reformation, but only equitable relief. Plaintiff prayed for reformation "if necessary." The court suggested that the reservation was ambiguous. If this was the basis of the court's decision, then the action was treated as simply an action to quiet title and the decision is not in conflict with Easley v. Ashton. If a proper interpretation of an ambiguous conveyance places the title in one party he does not need reformation, and as to severed minerals, he has been in constructive possession of same all the time.

Furthermore, the court implied in the Hudson case, that the statute did commence running when plaintiff had notice of a hostile claim. As will be hereinafter shown, the defendants in the instant case were aware of an adverse claim to the controverted minerals for at least eight years prior to the time they asked for reformation. In such case the statute has been held to run even against one in possession. See 106 A.L.R. 1342.

Defendants also rely on Newbern v. Gould, 162 Okl. 82, 19 P.2d 157, 160. In that case we said:

"The general rule seems to be, where reformation is sought as defensive matter, that, 'even though such an equitable defense is within the spirit of the statute, the statute does not begin to run against an equitable right to reform a deed until an attempt is made to assert the deed against the

party in possession." 23 R.C.L. 353. This rule is in effect to say that the statute does not begin to run against the right to reform as a defense until a right is asserted against the defendant which requires him to ask for a reformation to protect his rights. Here no claim was ever asserted contrary to the clear intention of the parties to the original transaction including plaintiff, until shortly before this action was commenced." (Emphasis ours.)

It will be noted that the court was relying on a statement from Ruling Case Law, which expressly limits the rule to cases where the defendant is in *possession*, yet in paraphrasing the rule the court omitted the word "possession." Whether inadvertent or not, we think the omission of such qualifying word was erroneous. See Annotation, 106 A.L.R. 1342. Furthermore, that case is distinguishable on the same basis as Hudson v. Smith, supra, because in the instant case *an adverse claim was asserted* against defendants for more than eight years prior to their action for reformation.

There are cases holding that the statutes of limitations never bar a party who is seeking to defend himself against the enforcement of a fraudulent contract, but that rule does not apply where the defendant is seeking affirmative relief and must get affirmative relief in order to derive any benefit from such defense. Dixon v. Hawkins, 178 Okl. 250, 62 P.2d 251. As was the case in Easley v. Ashton, supra, the defendants must obtain reformation before they will have title to the controverted mineral interest, and since they have not been in possession of same the statute of limitations applies to their action to reform. The plaintiff is the record owner of the controverted mineral interest and therefore must be deemed to be in possession of same. They are not seeking to take anything from defendants, but only to have their record title quieted against a stale claim asserted by the defendants.

Which statute of limitation is applicable, and when, if ever, did it commence running?

The defendants did not specifically plead fraud, and in their brief they deny that they are relying on fraud. Reformation may be had for mutual mistake or for mistake on one side and fraud or inequitable conduct on the other. Oklahoma City Federal Savings & Loan Ass'n v. Clifton, 183 Okl. 74, 80 P.2d 283. The trial court made general findings for the defendants, without specifying whether relief was being granted on the basis of fraud, inequitable conduct or mutual mistake. It does not appear that there was a mutual mistake, but the particular basis upon which relief could be granted is of no significance, because in any event the statute has run. If the right to recover is primarily based on fraud the two-year statute is applicable. Bruce v. Exchange Royalty Co., supra; Easley v. Ashton, supra. If the right to recover is based upon mutual mistake it falls within the sixth subdivision of 12 O.S. 1951 § 95, which provides: "An action for relief, not hereinbefore provided for, can only be brought within five years after the cause of action shall have accrued." Hoskins v. Stites, supra; Mundy v. Dependent School Dist. No. 32, Okl., 272 P.2d 447. And the five-year statute would also be applicable if the right to recover is based upon inequitable conduct which falls short of fraud. In Pepper v. Truitt, 10 Cir., 158 F.2d 246, 250, the court in construing our limitations statute said:

"* * * Although appellants plead facts, which if true, amount to undue influence or 'unconscionable advantage', they assiduously avoid any mention of the word fraud, and in their briefs deny any intention to rely upon it. This is not an action upon an oral contract under Section 95 (2), Title 12 O.S.A., or for damages for its breach. It is an equitable action for cancellation of the deed and possession of the property, based upon failure of consideration. * * *. It is thus clear that since neither the two, three nor fifteen year statute of limitations applies, the action is one for relief 'not

hereinbefore provided for' and the five year statute is analogous."

■ Plaintiff contends that the statute commenced running in 1940, at the time defendants signed the deed. In an action based on fraud, the statute does not commence to run until the fraud is discovered or should have been discovered, and in Hoskins v. Stites, we held the same rule was applicable in actions for reformation based upon mutual mistake. See also Mundy v. Dependent School Dist. No. 32, supra. Whether the fraud, inequitable conduct or mistake should have been discovered at the time the instrument was signed will usually depend upon the particular circumstances. We do not think it would run from date of execution in every case because if it can be said that it *should have been discovered* at that time, there would be no reason to excuse the party's negligence in the first instance. It would be as well to say that a party who signs an instrument without reading it is barred from obtaining relief at any time because his injury is a result of his own negligence. But fraud or inequitable conduct on one side excuses negligence on the other side. Oklahoma City Federal Savings & Loan Ass'n v. Clifton, supra. Harrell v. Nash, 192 Okl. 95, 133 P.2d 748. See 45 Am. Jur. Reformation of Instruments, Sec. 81.

■ However, even if it is assumed in the instant case the statute did not commence to run at the time defendants executed the deed, it is clear that it did commence when they were put on notice that plaintiff and/or her predecessors were claiming that defendants did not reserve what they were claiming. In defendants' original answer and cross-petition it is alleged that the sufficiency of the reservation to comply with the agreement was brought to defendants' attention by P. A. Maloy prior to the time he purchased the property which was in 1942.

Upon being questioned as to this allegation the defendant M. M. Smith testified that it was true, and that Maloy did tell him. However, he later testified that in the conversation Maloy only asked him what he held against the place. But he also testified as to a later conversation with Maloy wherein Maloy told Smith he was going to sue him unless he quit-claimed one-half the minerals. The time of this conversation was fixed by Smith at "a year and a half or two years later" and "some two years or longer after Shannon had sold the property to Maloy." The property was sold to Maloy in July 1942. The present action was commenced in June 1953.

We are of the opinion that the clear weight of the evidence shows that the defendants knew or should have known that the reservation in their deed to Shannon did not reserve one-half of the minerals, and that Maloys were claiming to own all the minerals less one-half of the royalty interest for more than five years prior to commencement of this action, and therefore their claimed right to reformation was barred by the statute of limitations.

On March 17, 1959, it appearing that Nettie J. Maloy had died, this cause was revived as to her in the names of R. E. Maloy, Flora Maloy and Mary Virginia Williams, coexecutors of the estate of Nettie J. Maloy, deceased.

The judgment is reversed and remanded, with instructions to vacate the judgment rendered in favor of defendants and render judgment quieting title in plaintiff to all the minerals, except the royalty interest specifically reserved in the deed from the Smiths to the Shannons dated Oct. 15, 1940, recorded in Book 128, at page 30, in the office of the County Clerk of McClain County.

DAVISON, C. J., WILLIAMS, V. C. J., and JOHNSON, IRWIN and BERRY, JJ., concur.

HALLEY, J., concurs in result.

WELCH and BLACKBIRD, JJ., dissent.