1998 OK CIV APP 75

**Joe Lynn BAXTER, Petitioner,**

v.

**MONTGOMERY EXTERMINATING, The State Insurance Fund, and The Workers' Compensation Court, Respondents.**

**No. 90256.**

Court of Civil Appeals of Oklahoma, Division No. 3.

March 3, 1998.

Rehearing Denied May 5, 1998.

Pamla K. Cornett, Tulsa, for Petitioner,

Kevin D. Berry, Tulsa, for Respondent.

## OPINION

HANSEN, Judge:

¶1 Petitioner, Joe Lynn Baxter (Claimant), seeks review of a Workers' Compensation Court order which, among other things, awarded Respondent, Montgomery Exterminating (Employer), credit for overpayment of temporary total disability compensation, and limited continuing medical maintenance to a period of six months.

### FACTUAL BACKGROUND AND CASE HISTORY

¶2 Claimant injured his back while on the job with Employer in May 1995. He continued to work until December 1995, when he said he could not work any longer because of the pain. In the interim he had been treated by his primary care physician,

Dr. R.G., under his health care benefits. Employer began temporary total disability compensation payments on December 12, 1995.

¶3 Claimant continued under the care of his primary care physician, who referred him to Dr. L., a neurosurgeon. Dr. L. saw Claimant on January 12, 1996. Dr. L.'s report shows he related to Claimant that his examination was "entirely within normal limits" and that it was "perfectly safe" for Claimant to return to work. Dr. L. advised Claimant to use regular physical exercise and nonprescription medications to control pain.

¶4 After he had seen Dr. L., Claimant was nonetheless continued on physical therapy and was given a release from work by his treating physician. Claimant forwarded the release to the State Insurance Fund, Employer's insurer. Claimant also filed his Form 3 claim in January 1996. Medical care was provided under Workers' Compensation coverage from that time.

¶5 After January 1996, Claimant was referred to Dr. A. for pain management. Dr. A. prescribed a pain clinic, physical therapy and "facet blocks." Employer refused to pay for a scheduled facet block in November 1996, and referred Claimant to see Dr. W.G. Claimant saw Dr. W.G. on November 6, 1996. Dr. W.G. opined Claimant had 0% permanent partial disability, that Claimant was not temporarily totally disabled at that time, and that Claimant required no further medical treatment.

¶6 Employer discontinued Claimant's temporary total disability compensation payments shortly after receiving Dr. W.G.'s report. On December 4, 1996, Claimant filed a Form 9, Motion to Set for Trial, on the issue of improper termination of compensation. Claimant asserted Employer had not provided him with either a Form 11, Motion to Terminate Temporary Compensation, or a medical report to support such termination.

¶7 Employer then filed its Form 11 on December 19, 1996, which also requested credit for overpayment of temporary total disability compensation. Employer listed Dr. W.G. as the medical witness in support of its motion. Although it is not expressly stated in the record, it appears Employer reinstituted temporary compensation after Claimant's motion and continued payments until February 24, 1997.

¶8 At trial, the parties represented to the court that the issues to be decided were permanent partial disability, continuing medical maintenance, vocational rehabilitation evaluation, and Employer's claim for overpayment of temporary total disability compensation. The court found Claimant sustained 2% permanent partial disability, but denied Claimant's requests for vocational rehabilitation evaluation and facet injections from Dr. A. The court ordered Employer to furnish Claimant with continuing medical maintenance in the form of prescriptions for six months from the date of the order. The court also awarded Employer credit for overpayment of temporary total disability compensation for the period November 6, 1996, to February 24, 1997.

¶9 Upon appeal by Claimant, a three judge panel of the Workers' Compensation Court modified the order only to allow vocational rehabilitation evaluation. Claimant now seeks review of the order as modified.

## STANDARD OF REVIEW

¶10 When a three judge panel substituted decision is submitted for our consideration, it must be reviewed by applying the traditional any-competent-evidence test of correctness. *Parks v. Norman Municipal Hospital*, 1984 OK 53, 684 P.2d 548. Under this standard, our responsibility simply is to canvass the facts, not with an object of weighing conflicting proof in order to determine where the preponderance lies, but only for the purpose of ascertaining whether the Workers' Compensation Court's decision is supported by competent evidence. *id.*

## TERMINATION OF TEMPORARY COMPENSATION

¶11 Claimant alleges error in that part of the Workers' Compensation Court's order terminating his temporary total disability compensation. Claimant argues the court's determination is contrary to Rule 15, Workers' Compensation Court Rules (Rule 15), and is not supported by competent evi-

dence. We find Claimant's contentions have merit.

■ ¶ 12 The applicable version of Rule 15 is that prior to its amendment effective July 1, 1995. Claimant's injury was in May, 1995. The parties' respective rights in a Workers' Compensation case are determined by the law in effect at the time of injury. *Knott v. Halliburton Services,* 1988 OK 29, 752 P.2d 812. However, the provisions of Rule 15 which are relevant here remained substantially the same after amendment.

¶ 13 Rule 15 dictates how temporary compensation may be terminated. Subsection A deals with termination *without* a court order. The only provision in that subsection which has any possible relevancy is A(3), which allows an employer to terminate temporary compensation if a claimant requests a trial to determine permanent disability. Claimant filed such a request on February 27, 1997. The Workers' Compensation Court, however, found Employer was entitled to terminate temporary compensation on November 6, 1996, so it is obvious the court did not base its determination on Rule 15(A)(3). Additionally, Employer implicitly conceded it could not terminate temporary compensation without a court order when it filed its Form 11.

■ ¶ 14 Where Rule 15(A) does not apply, 15(B) applies "[i]n all other events." In accordance with 15(B), the employer must file a Form 11, and:

> If the employer's request to terminate is based upon the written medical report of a physician who indicates the employee has been released from the physician's professional care and is able to return to work, a copy of that report which is to be offered at trial shall be attached to the Form 11.

¶ 15 Claimant's contentions are, in part, grounded in the Rule 15(B) requirement that the physician's report upon which the employer relies must state the employee has been *released from the physician's professional care.* Claimant argues the foregoing emphasized phrase shows an intent to require the 15(B) physician be a *treating* physician rather than a medical expert retained merely to evaluate a claimant for the purposes of Workers' Compensation Act proceedings. In other words, Claimant asserts *professional care* connotes a physician-patient relationship the purpose of which is to bring a claimant to his or her maximum medical recovery.

¶ 16 This issue has not been decided by our appellate courts. We find Claimant's argument persuasive. If the Workers' Compensation Court, in adopting Rule 15, had intended that *any* physician could satisfy the 15(B) requirement, it merely had to express that the physician need indicate only that the claimant had reached maximum medical recovery and was able to return to work. See, *Bodine v. L.A. King Corp.,* 1994 OK 22, 869 P.2d 320, 321. Instead, the Workers' Compensation Court selected language necessitating that the claimant have been under the physician's *care.*

¶ 17 A *treating* or *attending* physician within the meaning of the Workers' Compensation Act is defined at 85 O.S.Supp.1995 § 3(17) as a licensed physician who had provided or is providing medical *care* to the injured employment. In accordance with 85 O.S.Supp.1995 § 14(A)(2):

> The *attending* physician who renders treatment to the employee at any time shall promptly notify the employee and employer or the employer's insurer in writing after the employee has reached maximum medical improvement and is released from active medical care.

¶ 18 Construing Rule 15(B) as requiring the report of a treating physician is consistent with the statutory burden imposed upon attending or treating physicians to promptly notify employers when a claimant, in the physician's opinion, has met the two pronged test of § 14(A)(2). Section 14(B) gives the employer's selected physician the right to examine the injured employee, but that physician is given no statutory authority such as is given to treating physicians in § 14(A)(2).

¶ 19 The Workers' Compensation Court based its determination to award Employer credit for overpayment of temporary compensation on the report of Dr. W.G., who examined Claimant for Employer. There is nothing in Dr. W.G.'s report to establish he

was Claimant's treating physician. To the contrary, Dr. W.G. states in the history portion of his report that:

> [Claimant] states he currently remains under the care of Dr. [R.]G. and Dr. A. He states he has been given no date when he will be *released from treatment or allowed to return to work.* (Emphasis added).

¶ 20  Further, there is no other evidence of record to supplement Dr. W.G.'s report so as to make the report—or his opinion that Claimant was not temporarily totally disabled on November 6, 1996—sufficient under Rule 15(B). Claimant introduced the deposition, with report attached, of his medical expert, Dr. T. Dr. T. opined Claimant was temporarily totally disabled until January 10, 1997 and that he would require vocational retraining before he could be returned to even light duty. Employer introduced Dr. L.'s report for historical purposes only, and expressly "not on the temporary disability issue."

¶ 21  Contrary to Employer's assertion, Claimant did, in the Workers' Compensation Court, raise the issue of Dr. W.G.'s report as it pertained to the question of temporary compensation. In responding to the court's query to address Employer's request for overpayment, Claimant stated, *inter alia,* "[w]e would also object to the additional evidence, which I am assuming is the medical report of Dr. [W.G.]."

¶ 22  There is no competent evidence of record to support the Workers' Compensation Court's finding that Claimant's period of temporary total disability ended on November 6, 1996. That finding, and the concomitant award to Employer for overpayment of temporary compensation, must therefore be vacated as a matter of law.

### *DENIAL OF MEDICAL MAINTENANCE*

■ ¶ 23  Claimant next contends the Workers' Compensation Court erred in denying continuing medical maintenance care, that is, facet injections, by Dr. A, and in limiting continuing medical in the form of prescriptions to a period of six months. The issue of the necessity of medical treatment for a Workers' Compensation claimant is a question of fact to be determined by that

court. *Phillips Petroleum Co. v. Carter,* 1995 OK CIV APP 138, 914 P.2d 677. We will not disturb a finding of fact by the Workers' Compensation Court if it is supported by competent evidence, and not otherwise contrary to law. *Parks v. Norman Municipal Hospital,* 684 P.2d at 552.

¶ 24  Dr. W.G. notes in the history portion of his report that Claimant stated he underwent three facet blocks, and that "the blocks were ineffective in relieving his pain." Dr. W.G. also opines in his report that Claimant "requires no additional medical treatment." We find no merit in Claimant's assertion Dr. W.G.'s report was silent with respect to medical maintenance.

■ ¶ 25  The Workers' Compensation Court is allowed to draw reasonable inferences from the evidence. *Paschen v. Ratliff City Trucking Co.,* 1981 OK CIV APP 54, 637 P.2d 591. Dr. W.G. was aware Claimant had received facet block injections and opined he needed no additional medical treatment. It is reasonable to infer that Dr. W.G. was of the opinion Claimant needed no further facet injections for any purpose, including continuing medical maintenance. Dr. W.G.'s report supports the controverted finding.

### *IMPOSING TIME LIMITS ON MEDICAL MAINTENANCE*

■ ¶ 26  The question is whether the Workers' Compensation Court, once having decided that continuing medical treatment was necessary, may limit the term for which such medical maintenance is allowed without appropriate medical evidence. Employer's obligation to provide Claimant with medical treatment is found at 85 O.S.Supp. 1995 § 14. This obligation extends to medical treatment the purpose of which is not to change Claimant's permanent disability, but, rather, to serve to provide him with more comfort in maintaining his present condition. *Zebco Motorguide v. Briggs,* 1994 OK CIV APP 60, 881 P.2d 103.

¶ 27  Section 14 contains no provision authorizing the court to specify a term for which continuing medical maintenance will be allowed. Where the Legislature has intend-

ed to impose a limit on benefits, and to require claimants to request extensions of those benefits, it has done so expressly. See, e.g., 85 O.S.Supp.1997 §§ 22(2) and 22(4) (temporary compensation paid for 52 weeks, but claimant may request review for additional 52 week periods).

¶ 28 In fact, Section 14 itself, before its 1973 amendment, stated medical treatment would be provided "as may be necessary during sixty (60) days after the injury or for such time in excess thereof as in the judgment of the Court may be required." By deleting the 60 day limit and requirement for a claimant to seek extensions from the court, we believe the Legislature intended for the medical treatment to continue until there is a finding by the court that such treatment is no longer necessary. The amendment served to lift the burden from the claimant to return to court after a specific time for approval of additional medical treatment.

¶ 29 The need for medical treatment, and the extent of that treatment, must, as a matter of necessity, be based on medical expert evidence. There is no medical evidence to support the court's finding that Claimant will only need continuing medical maintenance for a period of six months. In the absence of statutory authority for the Workers' Compensation Court to limit such treatment as a matter of law, the court's finding limiting medical maintenance to a period of six months is erroneous and must be vacated.

¶ 30 Those portions of the Workers' Compensation Court's order awarding Employer a credit for overpayment of temporary compensation and limiting medical maintenance for a period of six months are VACATED. The remainder of the order is SUSTAINED. This matter is REMANDED to the Workers' Compensation Court for further proceedings consistent with this opinion.

VACATED IN PART, SUSTAINED IN PART AND REMANDED.

ADAMS, J., and BUETTNER, P.J., concur.