2007 OK CIV APP 10

**Ivy Lively Newton COX, Plaintiff/Appellant,**

v.

**KAISER–FRANCIS OIL COMPANY; Vernon E. Faulconer, Inc.; and, Washita Oil & Gas, L.L.C., Defendants/Appellees.**

**No. 103487.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 21, 2006.

Certiorari Denied Jan. 16, 2007.

Richard M. Fogg, Richard M. Fogg, P.C., Tim Haley, Haley Law Office, El Reno, OK, for Plaintiff/Appellant.

Keith F. Sellers, Sellers Law Firm, P.C., Tulsa, Oklahoma, for Defendant/Appellee, Kaiser–Francis Oil Company.

Gregory L. Mahaffey, Lee D. Groeneveld, Mahaffey & Gore, P.C., Oklahoma City, Oklahoma, for Defendants/Appellees, Vernon E. Faulconer, Inc. and Washita Oil & Gas, L.L.C.

CAROL M. HANSEN, Judge.

¶1 Plaintiff/Appellant, Ivy Lively Newton Cox (Grantor), seeks review of the trial court's order granting summary judgment in favor of Defendants/Appellees, Kaiser–Fran-

cis Oil Company (Kaiser), Vernon E. Faulconer, Inc. (Faulconer), and Washita Oil and Gas, LLC (Washita). We reverse, holding the statute of limitations did not begin to run on Grantor's claim for reformation of a mineral reservation until the legal effect of the language was questioned or disputed. We find a latent ambiguity in the language of the mineral reservation arising from the undisputed fact it relates to a unit well, and remand for trial on Grantor's claims for reformation, quiet title, and accounting.

¶ 2 According to Grantor, she inherited a mineral royalty interest in Section 12, Township 14 North, Range 10 West I.M., in Canadian County, Oklahoma. In 1986, she was receiving royalties from two producing wells in the section, the Stevens # 1–12 well, operated by Kaiser, and the S.P. Helm # 1–12 well, operated by Faulconer. Grantor states in her affidavit she contacted Kaiser, seeking to sell her interest in the Stevens # 1–12 well while retaining her interest in the S.P. Helm # 1–12 well. In response, Kaiser sent her a letter stating,

[Kaiser] hereby offers to purchase from you a 1.5625% nonparticipating term royalty interest in the Stephens # 1–12 unit (excluding your interest in production from the S.P. Helm. # 1 well located in the same section) for $32,500 effective September 1, 1986.

If you choose to accept our offer, please sign below and return that copy of this letter to the undersigned....

Grantor signed the letter and returned it with a letter stating,

I am enclosing this note along with the accepted purchase offer for my percentage of Stephens 1–12 well.

Would you please call me as soon as you receive this, so we can set up the fastest possible transaction. We are purchasing a home here in Lawton and the closing date is dependent upon the purchase of this royalty....

¶ 3 The parties closed the transaction on September 4, 1986. Grantor and her husband signed a deed conveying to Kaiser,

[A]ll of Grantor's interest in and to all of the oil royalty, gas royalty, and royalty in casinghead gas, and distillate gasoline, and royalty in other associated minerals in and under, and that may be produced and mined from the following described lands situated in the County of Canadian, State of Oklahoma, to wit: South one-half (S1/2) Section 12, Township 14 North, Range 10 West....

Said lands or portions thereof, being now under oil and gas lease dated October 14, 1966, from Samuel P. Helm and Fannie A. Helm, husband and wife, Lessors, to L.J. Johnston, Lessee, ... it is understood and agreed that this sale is made subject to the terms of said leases, but covers and includes all the [royalty] due and to be paid under the terms of said lease to Grantor, less and except the Grantor's interest in the wellbore rights and production from the S.P. Helm # 1 well located in the center of the Southwest quarter of Section 12–T14–R10W, Canadian County, Oklahoma.

In her deposition, Grantor described her interaction with the Kaiser representative at the closing:

We went in and when we were in there I said, I was reading this, and I said, now, this keeps my Helm's stuff my grandfather left me except for the Stephens well, and he said yes. And he showed me the part in here about the Helm ... and I asked him if I needed to get a lawyer, and he said this was a simple contract, no, they could just notarize it and everything.... [H]e told me that I was just selling the Stephens well.

¶ 4 In 2001, Faulconer, as operator of the S.P. Helm # 1 well, applied to the Corporation Commission for approval to drill an increased density well in the drilling and spacing unit, and Kaiser protested the application. The Commission granted approval to drill a new well in the unit, the S.P. Helm # 2, as a replacement for the S.P. Helm # 1 well and not as an increased density well. Washita drilled and completed the new well. After Grantor learned Kaiser claimed the royalty interest it purchased from her was included the new well, she brought the present action.

¶ 5 Kaiser moved for summary judgment, asserting the deed unambiguously reserved only the S.P. Helm # 1 wellbore, there was no mutual mistake, and the statute of limitations began to run in September 1986 when Grantor read and signed the deed and the deed was recorded. Faulconer and Washita moved for summary judgment on the grounds Grantor's action was barred by the statute of limitations. Grantor moved for summary judgment as to her interest in the S.P. Helm # 2, arguing the Commission's order authorizing it as a replacement well for the # 1 entitled her to declaratory judgment that her interest in the S.P. Helm # 1 was replaced by an interest in the S.P. Helm # 2.

¶ 6 The trial court granted summary judgment in favor of all Defendants. Grantor appeals without appellate briefs in conformance with the procedures for the appellate accelerated docket, Okla.Sup.Ct.R. 1.36, 12 O.S.Supp.2003, Ch. 15, App. 1.

¶ 7 Because a grant of summary judgment involves purely legal determinations, we will review the trial court's decision under a *de novo* standard. *Carmichael v. Beller*, 1996 OK 48, 914 P.2d 1051, 1053. Summary judgment is appropriate only when there is no substantial controversy as to any material fact and one of the parties is entitled to judgment as a matter of law. 12 O.S.Supp. 2002, Ch. 2, App. 1, Rule 13.

## I

¶ 8 Reformation is an equitable remedy available upon showing (1) an instrument representing an antecedent agreement which should be reformed, (2) mutual mistake or mistake by one party and inequitable conduct on the part of the other, which results in an instrument that does not reflect what either party intended, and (3) proof of these elements by clear and convincing evidence. *Thompson v. Estate of Coffield*, 1995 OK 16, 894 P.2d 1065, 1067–1068. The statute of limitations applicable to reformation is *12 O.S.Supp.2005 § 95* (A)(12), which requires the action be brought within five years after the cause of action has accrued. *Overholt v. Independent School Dist. No. 2, Tulsa County (Overholt)*, 1993 OK CIV APP 75, 852 P.2d 823, 825. A cause of action for reformation accrues when the plaintiff discovered or should have discovered the mistake, fraud, or inequitable conduct. *Id.*

¶ 9 In *Overholt*, the real property purchase contract indicated the seller would reserve the minerals, but the deed the seller signed did not include a mineral reservation. The seller asserted he did not discover the mistake until after minerals were produced from the tract and he failed to receive a royalty check. The Court held the seller had constructive notice of the alleged mistake when the deed was recorded, and he should have discovered it at that time. Therefore, the action was time-barred. *Id.* at 826. Overholt did not involve any issue as to whether the language of the deed had the legal effect of reserving minerals in accordance with the parties' agreement.

¶ 10 In *Maloy v. Smith (Maloy)*, 1959 OK 69, 341 P.2d 912, the sellers asserted they intended to reserve half the minerals, but the deed reserved only half the royalty. They did not seek reformation until more than eight years after they first learned the buyer's successor in interest claimed they reserved only half the royalty. In holding the sellers' claim for reformation was time-barred, the Court stated,

> Whether the fraud, inequitable conduct or mistake should have been discovered at the time the instrument was signed will usually depend upon the particular circumstances. We do not think it would run from date of execution in every case because if it can be said that it should have been discovered at that time, there would be no reason to excuse the party's negligence in the first instance. It would be as well to say that a party who signs an instrument without reading it is barred from obtaining relief at any time because his injury is a result of his own negligence. But fraud or inequitable conduct on one side excuses negligence on the other side.

> However, even if it is assumed in the instant case the statute did not commence to run at the time defendants executed the deed, it is clear that it did commence when they were put on notice that plaintiff and/or her predecessors were claiming that

defendants did not reserve what they were claiming.

*Id.* at 918 (citations omitted).

¶ 11 In *Good v. Cohlmia,* 1958 OK 230, 330 P.2d 588, the action was brought more than 30 years after execution and delivery of the mineral deed sought to be reformed. As in *Maloy,* at issue was whether the deed conveyed half the minerals or half the royalty. The buyer asserted the parties had agreed to a conveyance of one-half the minerals. The tract was subject to a lease under which the seller was entitled to a royalty of one-eighth of the production. The deed, executed in 1926, stated it conveyed a "one-sixteenth" interest in the minerals. Following the conveyance, lease operators paid the buyer half the royalties and half the bonus payments. A dispute about the mineral ownership did not arise until late 1956 or early 1957, when a prospective lessee contacted the parties about obtaining a new oil and gas lease on the property. The trial court rejected a statute of limitations defense and granted judgment reforming the deed, finding mutual mistake. In affirming, the Court held the statute of limitations did not begin to run until the legal effect of the deed was questioned or disputed. *Id.* at 590.[1]

¶ 12 In the present case, Grantor would not have known of any adverse claim to her royalty rights so long as the Helm # 1 continued to produce and she continued to receive royalty checks, albeit in declining amounts. The question as to the legal effect of the deed did not arise until Grantor learned Kaiser claimed the royalty interest it purchased from her included the new well. According to the attorney correspondence in the record on appeal, Grantor had notice of Kaiser's claim by June 19, 2001. She filed this action on May 2, 2003, well within the five-year limitations period. The trial court erred in granting summary judgment to Defendants based on the statute of limitations. Grantor submitted evidence establishing a *prima facie* case for reformation based on mistake by one party and inequitable conduct

by the other, resulting in an instrument that did not reflect the parties' intent. Her claim for reformation must be remanded for trial.

## II

¶ 13 Grantor's quiet title claim is dependent upon construction of the deed in her favor. The deed is not subject to construction unless it is ambiguous. Whether a conveyance is ambiguous is a matter of law. If the court determines a deed is ambiguous, it must resolve the ambiguity by considering extrinsic evidence, including the parties' admissions and construction, and other circumstances, in order to give effect to the mutual intent of the parties as it existed at the time of contracting. *Crockett v. McKenzie,* 1994 OK 3, 867 P.2d 463, 465. A latent ambiguity is a defect not appearing on the face the instrument being considered and arises when some extrinsic fact creates a necessity for interpretation or a choice between two or more possible meanings. *Ryan v. Ryan,* 2003 OK CIV APP 86, 78 P.3d 961, 965.

¶ 14 In the present case, the deed reserves "the Grantor's interest in the wellbore rights and production from the S.P. Helm # 1 well located in the center of the Southwest quarter of Section 12...." The extrinsic fact that Grantor owned no participating interest in the well renders the reservation of "wellbore rights" ambiguous. Rights to a well bore and its associated mechanisms belong to the lessee while a lease is in force. *Santa Fe Minerals v. Sanford,* 1992 OK CIV APP 82, 842 P.2d 363, 364. Grantor did not own any such rights.

¶ 15 Even if the reservation of wellbore rights has no effect, the reservation of "Grantor's interest in ... production from the S.P. Helm # 1," would be clear if the well were merely a well drilled pursuant to the Helm lease, as indicated in the deed. However, the S.P. Helm # 1 well is a unit well. A royalty owner's interest in production in a unit well is defined by statute:

---

1. *See also Nelson v. Daugherty, 1960 OK 205, 357 P.2d 425,* 433 ("The mistake which the plaintiffs seek to reform is a mistake in the legal effect of mineral reservations. In such case the statute does not begin to run against an equitable right to reform a deed (before or) until the legal effect is questioned or disputed.").

In the event a producing well or wells are completed upon a unit where there are, or may thereafter be, two or more separately owned tracts, each royalty interest owner shall share in all production from the well or wells drilled within the unit, or in the gas well rental provided for in the lease covering such separately owned tract or interest in lieu of the customary fixed royalty, to the extent of such royalty interest owner's interest in the unit. Each royalty interest owner's interest in the unit shall be defined as the percentage of royalty owned in each separate tract by the royalty owner, multiplied by the proportion that the acreage in each separately owned tract or interest bears to the entire acreage of the unit.

*52 O.S.2001 § 87.1* (e). Therefore, Grantor's interest in production from a unit well was based on her percentage ownership of royalty in a tract within the unit, multiplied by the proportion the acreage in that tract bore to the entire acreage of the unit. Arguably then, the deed is subject to the interpretation that Grantor's reservation was of some percentage of royalty in acreage within the unit, and she would have the same interest in a replacement well that she had in an earlier unit well. These extrinsic circumstances render the mineral reservation ambiguous as a matter of law. Grantor is entitled to trial on the fact issue of the parties' intent at the time of contracting. The trial court erred in granting summary judgment to the Defendants.

¶ 16 Accordingly, the trial court's order granting summary judgment is REVERSED and this matter is REMANDED for trial.

BELL, P.J., and JOPLIN, J., concur.