2007 OK CIV APP 106

**PANGAEA EXPLORATION CORPORATION, successor to Mickey J. Overall, Plaintiff/Counter–Defendant/Appellee,**

v.

**Sarah RYLAND, Marie Billings, Barbara Ann Gill, Ross Lee Thomas, Mildred Ellis, Georgia Burlingame, Jacob W. Blevins, Ruth M. Blevins, Bill Dolan, Barth Campbell, Denise Campbell, Kevin Campbell, James Lynn Blevins, Roy Phillip Blevins, Arleta Gayle Blevins, Steven Ellis Blevins, Michelle Blevins, David M. Blevins, and John M. Billings, Defendants/Counter–Plaintiffs/Third–Party Plaintiffs/Appellants,**

and

**Grace Arlene Billings, Judith Marie Teeple, Elizabeth Billings, and Phern Billings, Defendants/Counter–Plaintiffs/Third–Party Plaintiffs,**

v.

**Oklahoma Title & Closing Company, Inc., Third–Party Defendant.**

**No. 104,402.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 5, 2007.

Richard Gore, Travis Brown, Mahaffey & Gore, P.C., Oklahoma City, Oklahoma, for Plaintiff/Counter–Defendant/Appellee.

Timothy Allen Heefner, Jennifer Bruner, Goolsby, Olson & Proctor, Oklahoma City, Oklahoma, for Defendants/Counter–Plaintiffs/Appellants.

KENNETH L. BUETTNER, Judge.

¶ 1 Defendants/Counter–Plaintiffs/Appellants Sarah Ryland, Marie Billings, Barbara Ann Gill, Ross Lee Thomas, Mildred Ellis, Georgia Burlingame, Jacob W. Blevins, Ruth M. Blevins, Bill Dolan, Barth Campbell, Denise Campbell, Kevin Campbell, James Lynn Blevins, Roy Phillip Blevins, Arleta Gayle Blevins, Steven Ellis Blevins, Michelle Blevins, David M. Blevins, and John M. Billings (Appellants) appeal from summary judgment granted in favor of Plaintiff/Counter–Defendant/Appellee Pangaea Exploration Corporation (Pangaea).[1] In 2005, Pangaea sought to quiet title to a mineral interest. Appellants counterclaimed seeking to quiet title in their names, claiming they did not intend to convey the minerals when they conveyed the surface estate to Pangaea's predecessor in 1997. Appellants' counterclaim required reforming the deed. The trial court erred in finding that the limitations period for reformation of deed began to run from the date the deed was recorded. The five-year limitations period for reformation of deed due to mutual mistake runs from the time the plaintiff discovered or should have discovered the mistake. Pangaea's cause of action for quiet title accrued when Appellants filed their Notice of Claim of Interest July 9, 2004. Under 12 O.S.2001 § 2013(C), Appellants' counterclaim is timely if it was not barred by a statute of limitations before Pangaea's claim arose. The evidence in the record on appeal[2] shows Appellants and the original grantee discovered the mutual mistake in 2004. We remand for trial of when the limitations period began to run as to Appellants' counterclaim, and consequently whether it is timely under § 2013(C).

¶ 2 Mickey J. Overall filed his Petition August 11, 2005. Overall asserted that in 1997, Appellants conveyed their interest in real property[3] in Logan County to NationsBank as Trustee of the Larry K. Wilson Managed IRA, Trustee for Larry K. Wilson. The warranty deeds conveying the property contained no reservation of minerals. Overall noted on July 9, 2004 Appellants filed in Logan County a Notice of Claim of Interest to All Mineral Rights. In the Notice, Appellants claimed they did not intend to convey the minerals with the surface. Overall asserted that Appellants had attached to their Notice the August 23, 1997 agreement to sell the real property. Larry K. Wilson conveyed "100% of his interest in and to all of the oil and gas and other minerals" in the property to Overall by quit claim deed executed January 11, 2005 and recorded the next day.[4] Overall asserted Appellants' Notice was a cloud on his title to the mineral interest. Overall asked for judgment quieting title to the minerals in his name.

¶ 3 In their Answer, Appellants asserted Overall's quiet title action was barred by mistake and estoppel. Appellants asserted also the warranty deeds purporting to convey the mineral interest were made and recorded in error and mistake and without the required intent to pass title to the minerals. Appellants included a Counterclaim for quiet title against Overall. Appellants averred the sales contract expressly excluded mineral rights from the sale. Appellants alleged that on October 3 and 23, 1997 they executed the warranty deeds, which were prepared by agents of Third–Party Defendant Oklahoma Title & Closing Co., and that, through a scrivener's error, the warranty deeds failed to reserve the mineral interest in the real

---

1. This matter was originally filed by Mickey J. Overall, to whom Pangaea is the successor in interest. By Order filed May 11, 2006, the trial court substituted Pangaea as the Plaintiff in this case.

2. As noted below, the record on appeal appears not to include the complete record of evidentiary materials which were before the trial court at the time of summary judgment. The trial court should determine in the first instance when the statute of limitations began to run. We express no opinion on that factual issue.

3. Described as land in the N/2 of Sec. 1–17N–3W of Logan County.

4. The record shows InvesTrust, successor trustee to NationsBank, had conveyed the mineral interest to Wilson individually by quit claim deed dated June 10.2004.

property. As noted above, Appellants executed and recorded their Notice of Claim of Interest to All Mineral Rights July 9, 2004. After Appellants filed their Notice, Larry K. Wilson conveyed his interest in the minerals to Overall by quit claim deed. Appellants asserted that on and after January 11, 2005, the date of the quit claim deed, Overall was on notice that Appellants claimed rights superior to all others in the mineral interest. Appellants asserted that Overall's claim to the minerals is adverse to theirs and asked the court to quiet title to the minerals in Appellants.

¶ 4 After Pangaea's substitution as Plaintiff, it filed its Motion for Summary Judgment.[5] Appellants filed their Response, in which they clarified certain facts. They show that in 1997 Appellants conveyed their interest in the property by warranty deed to Pangaea's predecessor. The contract for sale and other documents indicated the parties intended for Appellants to reserve their mineral interest from the conveyance, but through mutual mistake, the warranty deeds did not include a reservation of minerals.[6] Seven years later, Appellants and Wilson

discovered the deeds did not contain the mineral reservation. In 2004, Appellants filed their Notice of Claim of Interest to All Mineral Rights, in which they claimed that the warranty deeds failed to reserve the minerals due to a scrivener's error or inadvertent omission. Wilson later executed a quit claim deed in which he conveyed the mineral interest to Pangaea's predecessor.

¶ 5 Appellants asserted they filed their Notice of Claim in 2004 to give notice to prospective buyers of their claim and of the scrivener's error. Appellants further alleged they requested Wilson execute quit claim deeds to clear the chain of title to the minerals, to which Wilson agreed in exchange for reimbursement of the cost of having the minerals appraised.[7] Appellants asserted that Oklahoma Title & Closing Co. offered to pay the appraisal costs, but Wilson never executed quit claim deeds conveying the minerals to Appellants. Appellants also alleged that after Wilson conveyed the minerals to Overall, Oklahoma Title & Closing Co. asked Overall to execute a corrective quit claim deed, but Overall refused.

**5.** Pangaea asserted it was undisputed that: 1) on October 3, and 23, 1997, Appellants conveyed their interest in the property by warranty deed to NationsBank, Trustee of the Larry K. Wilson Managed IRA; 2) the warranty deeds did not include a reservation of minerals; 3) seven years later, on July 9, 2004, Appellants filed their Notice of Claim of Interest to All Mineral Rights, in which they claimed that the warranty deeds failed to reserve the minerals due to a scrivener's error or inadvertent omission; 4) on January 11, 2005, Wilson executed a quit claim deed in which he conveyed the mineral interest to Overall; 5) Overall filed his quiet title action August 11, 2005; 6) Pangaea acquired its interest from Overall; 7) Appellants claim an interest in the minerals by virtue of their Notice of Claim of Interest; 8) Appellants' claims to the minerals are adverse to Pangaea's interest; 9) nine wells have been drilled on the subject property, eight before 1997 and one in 2005. The Motion for Summary Judgment includes references to attached exhibits, but the copy of the motion in the record on appeal has no evidentiary materials attached. Because we reverse and remand, the omission of the exhibits is not fatal to appellate review. The record on appeal includes evidentiary materials attached to Appellants' Response to the Motion for Summary Judgment.

**6.** Appellants asserted the intent of the parties "was accurately and clearly stated within the" purchase contract, which stated no mineral

rights go with the property. Appellants noted that in addition to the purchase contract, the Closing Acknowledgment and Release also stated "land only," the abstract certification is limited to the surface rights, and the Commitment for Title Insurance stated "less and except all oil, gas, coal and other mineral types and all matters thereto pertaining." The warranty deeds containing the purported scrivener's error include the language "subject to all easements, restrictions and mineral reservations of record."

**7.** Appellants attached to their Response to the summary judgment motion a letter from then counsel to Wilson indicating that in 2004, Wilson was "willing to re-convey the mineral interests which were inadvertently conveyed to (Wilson), along with the surface (Wilson was) purchasing, upon repayment of (Wilson's) expenses in *getting everything straightened out.*" (Emphasis added). That letter indicated that Wilson demanded payment of his expenses associated with having the minerals appraised, because "(t)he land men that approached him to lease the minerals convinced him that they were rightfully his and in order to lease them from his Trust he had to have them appraised...." The record contains no evidence indicating Wilson believed the minerals were intended to be, or had been, conveyed to him in, and at the time of, the 1997 deeds.

¶ 6 In their Response to the summary judgment motion, Appellants asserted that on October 25, 1999, a Trustee's Special Warranty Deed was executed conveying the surface rights in the property from NationsBank as Trustee for Wilson, to InvesTrust as successor Trustee. Appellants noted that deed stated the conveyance was subject to all mineral reservations. Raymond Vaughn, counsel for the Wilsons, in a letter dated November 29, 2004, wrote that landmen approached Wilson to lease the minerals and "convinced him" that the minerals were his. On June 12, 2004, InvesTrust executed a quit claim deed conveying any interest in the minerals to Larry K. Wilson. Wilson conveyed his interest by quit claim deed to Overall six months after Appellants filed their Notice and Claim to the minerals. In August 2004, Eastern Land Services requested that Defendants Burlingame and Ryland execute an oil and gas lease on the property and advised them that the lease bonus would be held in escrow until the title issue was resolved. Appellants asserted this correspondence referred to prior communications on July 26, 2004. Appellants asserted that July 2004 was the first time Appellants received notice of the adverse claim.

¶ 7 In its Reply, Pangaea noted the parties did not dispute the material facts. Pangaea framed the issue as the legal question of when the statute of limitations begins to run against a party's right to reform a warranty deed due to mutual mistake. Although both Pangaea's claim and Appellants' counterclaim were for quiet title, Pangaea asserted the five year limitations period applicable to actions to reform a deed applied based on the following language in *Maloy v. Smith,* 1959 OK 69, 341 P.2d 912, 914: "... it is necessary to reform a deed regular on its face before title can be quieted, . . . ."[8]

¶ 8 The trial court filed the Journal Entry of Judgment against Appellants February 9, 2007. The trial court found the facts were undisputed and applied the five year statute of limitations in 12 O.S.Supp.2005 § 95(A)(12). The court relied on *Overholt v. Indep. School Dist. No. 2, Tulsa County,* 1993 OK CIV APP 75, 852 P.2d 823, to find that the limitations period "began to run against (Appellants') claims to reform such Warranty Deeds from the date the Warranty Deeds were filed of record ..." The trial court found that Appellants' claim to reform the warranty deed was made more that five years after the deeds were recorded and that it was therefore time barred. The trial court consequently quieted title to the minerals in Pangaea.[9]

¶ 9 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group,* 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not

8. The quote from *Maloy,* on which Pangaea relied, states in full: "We have heretofore held that the right of an owner in possession to remove a cloud from his title is a continuing right and never barred by limitations. This same rule generally applies in favor of both plaintiffs and defendants even though it is necessary to reform a deed regular on its face before title can be quieted, *if* the party seeking reformation has been in continuous, peaceable, and uninterrupted possession since the execution of the instrument." 341 P.2d at 914 (citations omitted, emphasis in original). Appellants were not "in possession" of the minerals after the 1997 deeds because the minerals were then titled in Wilson's IRA. We note, though, that in *Maloy* the court explained the rationale for the limitations period not running against one in possession: "if one is asserting peaceable dominion over and obtaining the benefit from that which he claims he acquired by the conveyance in question, he is entitled to assume that the other party to the instrument is acquiesc-

ing in his claim." *Id.* at 915. The evidence in the record on appeal suggests that Appellants and Wilson both believed that Appellants retained the mineral interest until land men "convinced" Wilson otherwise in 2004. During that time then, Appellants may have been entitled to assume Wilson was acquiescing to Appellants' ownership of the minerals.

9. The trial court dismissed Defendants Grace Arlene Billings, Judith Marie Teeple, Elizabeth Billings, and Phern Billings as parties at Pangaea's request. The record shows the October 27, 2004 warranty deeds executed by Judith Teeple and Elizabeth Billings contained mineral reservations. The October 27, 2004 warranty deeds conveyed the surface, of the same property described in the 1997 deeds, to InvesTrust, as Successor Trustee of the Larry K. Wilson Managed IRA.

proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.*, 1999 OK 73, 988 P.2d 1275.

¶ 10 An action to reform a deed is equitable, and in the case of a mutual mistake of fact, equity will correct the mistake. *Cunnius v. Fields,* 1969 OK 8, 449 P.2d 703, 706; *Nelson, supra.* The trial court relied on *Overholt, supra,* to find that the recording of the warranty deeds constituted constructive notice of the alleged mistake and a means of discovering the alleged mistake. The trial court held therefore that the five year statute of limitations for reformation of deeds ran from the date of recording, which in this case was January 12, 1998, and expired before Appellants filed their Counterclaim in October 2005. However, because the reformation claim was part of a counterclaim, the relevant question is not whether the limitations period for reformation expired before Appellants filed their counterclaim; the relevant issue is whether the limitations period expired before Pangaea's claim arose, pursuant to § 2013(C).

¶ 11 Pangaea initiated this action as a quiet title action, for which the statute of limitations period is 15 years. 12 O.S.2001 § 93(4). Appellants counterclaimed for quiet title as well. Pangaea responded that Appellants' claim required reformation of the deed before title could be quieted in them, citing *Maloy, supra.* The parties proceeded as though the five year limitations period for reformation of deeds applied. However, 12 O.S.2001 § 2013(C) provides that where a counterclaim and the claim of the opposing party arise out of the same transaction, the counterclaim shall not be barred by a statute

of limitation, unless the counterclaim was barred before the plaintiff's claim arose.[10]

¶ 12 In this case, Appellants' and Pangaea's claims arose out of the same transaction, but their claims arose at different times. The 15 year limitations period for the parties' quiet title claims began to run at the time of filing a document creating a cloud on the title to the minerals. In this case, Appellants' Notice of Claim to Minerals constituted such a cloud. Because the warranty deeds were regular on their face, reformation of the deeds was required to quiet title in Appellants. The 5 year limitations period for reformation of deed, based on mutual mistake, began to run when Appellants knew or should have known of the mistake, fraud, or inequitable conduct.

¶ 13 The trial court relied on *Overholt, supra,* to hold that recording the deeds "afforded means of discovery" and therefore held that the limitations period for reformation ran from that date. In *Overholt*, the grantor sued to reform the deed more than five years after recording. There, the evidence of an actual mutual mistake was slight. The grantor/plaintiff produced only an *unsigned* contract showing an intent not to convey the mineral interest with the surface. The conveyance was made to a school, and the school board's minutes approving the conveyance did not mention minerals. Additionally, a witness who had been one of the grantor's partners at the time of the sale did not recall the parties intended to reserve the minerals, and the partnership dissolution agreement described the assets but failed to mention the mineral interest at issue. Fourteen years after the deed was recorded, the grantor learned of drilling on the land and claimed he then discovered the mistake. The parties agreed the five year limitations period for reforming deeds applied.

---

10. Section 2013(C) provides, in pertinent part:
   C. COUNTERCLAIM EXCEEDING OPPOSING CLAIMS; STATUTES OF LIMITATION. A counterclaim may or may not diminish or defeat the recovery sought by the opposing party. It may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party. Where a counterclaim and the claim of the opposing party arise out of the same transaction or occurrence, the counter-
   claim shall not be barred by a statute of limitation notwithstanding that it was barred at the time the petition was filed, and the counterclaimant shall not be precluded from recovering an affirmative judgment. . . .
   Where a counterclaim was barred by a statute of limitation before the claim of the opposing party arose, the barred counterclaim cannot be used for any purpose.

¶ 14 In *Overholt*, the plaintiff asserted the limitations period began to run when he discovered the alleged mistake fourteen years after the conveyance. The defendant school district argued the statute began to run when the deed was recorded because it then became a public record and the plaintiff then had constructive notice and should have discovered the alleged mistake. The Oklahoma Court of Civil Appeals noted that the statute of limitations on the right to reform a deed due to mutual mistake runs from when the mutual mistake is discovered or should have been discovered. *Id.* at ¶ 11, citing *Maloy, supra.* Without further analysis, the court in *Overholt* held that the limitations period there began to run from the date of recording because that act afforded the means of discovery of the alleged mistake, and the court affirmed the trial court's finding the action was barred by the expired limitations period. *Id.* at ¶ 12.

¶ 15 Although the *Overholt* decision correctly quoted *Maloy*, we note that in *Maloy*, the Oklahoma Supreme Court recognized that the limitations period does not always run from the date the deed was executed. 341 P.2d at 918. In *Maloy*, the court explained:

Whether the fraud, inequitable conduct or mistake should have been discovered at the time the instrument was signed will usually depend upon the particular circumstances. We do not think it would run from date of execution in every case because if it can be said that it should have been discovered at that time, there would be no reason to excuse the party's negligence in the first instance. It would be as well to say that a party who signs an instrument without reading it is barred from obtaining relief at any time because his injury is a result of his own negligence. But fraud or inequitable conduct on one side excuses negligence on the other side. However, even if it is assumed in the instant case the statute did not commence to run at the time defendants executed the deed, it is clear that it did commence when they were put on notice that plaintiff and/or her predecessors were claiming that defendants did not reserve what they were claiming.

*Id.*[11] In *Maloy*, the court gave credence to evidence of a conversation, in which the parties discussed the deed's failure to reflect the parties' agreement, occurring over five years before the petition was filed. *Id.*

¶ 16 In *Nelson v. Daugherty*, 1960 OK 205, 357 P.2d 425, the Oklahoma Supreme Court held that the limitations period did not begin to run until the legal effect of the conveyance is questioned or disputed. In *Nelson*, the court noted an earlier case which held that *the statute does not begin to run while both the grantor and the grantee are operating under the belief the deed said one thing, but they later learned it did not reflect their intentions due to a scrivener's error. Id.* at 433–434 (emphasis added), citing *Harrison v. Eaves*, 1942 OK 339, 130 P.2d 841, 191 Okla. 453. See also *Good v. Cohlmia*, 1958 OK 230, 330 P.2d 588, which noted that "ordinarily the statute of limitations does not begin to run against an equitable right to reform a deed, on account of mutual mistake as to its legal effect, before such effect is questioned or disputed."

¶ 17 The evidence in this case suggests both the grantors and the grantee (Wilson) were operating under a mutual mistake of fact as to the terms of the deeds until 2004.[12] It is therefore unclear in this case when

---

11. See also *Crabb v. Chisum*, 1938 OK 402, 80 P.2d 653, 655, 183 Okla. 138, explaining the distinction between culpable negligence on the part of a party signing a deed and mutual mistake resulting from the negligence of a third party scrivener. *Crabb* held that where a scrivener prepared a deed which differed from the parties' agreement, the parties' failure to read the deed before signing was excusable and reformation could be had. *Id.* at 656.

12. In *Cox v. Kaiser–Francis Oil Co.*, 2007 OK CIV APP 10, 152 P.3d 274, this court noted that where the grantor continued to receive her royalty checks, she would not have known of an adverse claim to her ownership. This court relied on correspondence between the parties' attorneys to determine when the grantor had notice of the dispute over the effect of the deed. *Id.* at ¶ 12. This court found that the grantor first had notice within five years of her petition. *Id.* In this case, the parties dispute whether the minerals were explored, but there is no indication that Appellants were on notice of the mistake due to a change in receipt of royalties.

Appellants knew or should have known of the mistake. And it is therefore necessarily unclear whether Appellants' counterclaim is barred by the statute of limitations pursuant to § 2013(C). If Appellants' counterclaim was barred before Pangaea's claim arose, then § 2013(C) will not operate to make Appellants' claim timely. We therefore remand for trial of the issue of when Appellants' claim arose.

REVERSED AND REMANDED.

HANSEN, P.J., and BELL, J., concur.